[Civ. No. 3286. First Appellate District, Division One.—October 23, 1920.]

## ERROL JONES, a Minor, etc., Respondent, v. OLIVER KEHRLEIN, Jr., et al., Appellants.

[1] PERSONAL RIGHTS — DISCRIMINATION AGAINST MINOR NEGRO — AUTHORITY OF THEATER USHER — EVIDENCE.—In an action for damages for refusing to seat plaintiff, a minor negro citizen of the United States, in the section of a theater to which his ticket, in the hands of one not of the "dark races," entitled the holder to sit, an admission by defendants' counsel at the trial that the usher who refused to seat plaintiff in the section desired was acting under the authority of the management, coupled with testimony that subsequent to the occurrence one of the defendants, in conversation with plaintiff's father, stated that the management put all the "dark races" on a certain side, not because of any prejudice of his own against them, but for the reason that doing otherwise would hurt his business, sufficiently shows that the usher was authorized by the management to discriminate against the plaintiff.

[2] ID.—DISCRIMINATION IN SEATING OF MINOR NEGRO—LIABILITY IN DAMAGES.—Under sections 51 and 52 of the Civil Code, the proprietors of a moving picture theater are liable in damages to a minor negro citizen of the United States for refusal to seat him in that section of the theater to which the ticket sold him, if in the hands of one not of the "dark races," would entitle the holder to sit.

[3] ID.—RESERVATION OF RIGHT TO ASSIGN SEATS — VALIDITY OF TICKET PROVISION.—While the management of a theater has the right to adjust the seating of its audience, and to select within legal bounds and for legal reasons the seats of its various patrons who purchase tickets containing a provision to the effect that the holder is to be admitted to such seat as might be assigned by the management, such a provision in a ticket, if meant to give the management the right to discriminate against the holder in seating him on account of his race and color, is to that extent illegal and void.

[4] ID.—PUBLIC AMUSEMENTS—RESTRICTIONS AS TO MINORS—INTENT —CONSTRUCTION OF CODE.—The provisions of section 53 of the Civil Code are intended to guarantee admission of all citizens to places of amusements, and the restriction therein as to minors, if

---

1. Discrimination against, and exclusion of, persons obnoxious to proprietor of place of amusement, note, Ann. Cas. 1916B, 729.

the language imports such restriction, is intended only to permit the exclusion of minors from certain classes of public amusement and not to form a defense to an action by one whose rights under sections 51 and 52 have been violated.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Everts & Ewing and J. R. Fitch for Appellants.

E. Burton Ceruti for Respondent.

BEASLY, J., *pro tem.*—This is an appeal from a judgment obtained by plaintiff against the defendants.

The plaintiff is a minor, a citizen of the United States and a negro. The defendants conduct a moving picture show at Fresno, and on June 20, 1918, sold to plaintiff two tickets to the show, upon presentation of which plaintiff and his young woman friend were admitted to the showroom. He was thereupon directed by an usher, acting under general orders from the management, to seats on the right side of the house which were set apart by the management for the use of what the defendants termed "the dark races." The boy declined to follow the direction of the usher, and requested a seat in a part of the house not so set aside, namely, in the rear of the center section where, incidentally, there were plenty of vacant and unsold chairs. The ticket was of the kind which in the hands of one not of the "dark races" admitted the holder to seats in this latter section of the house. This request on his part was refused, and he and his companion thereupon left the theater. He subsequently brought this action to recover five thousand dollars as damages because of the incident, and was awarded judgment for one hundred dollars. The defendants appeal from this judgment.

In response to allegations of the complaint the trial court found that the plaintiff was refused a seat in the center section of the lower floor of the theater solely because he was a negro, and that he was thereby denied the full accommodation and privileges of the theater because of his race and color and without any other cause applicable to

all citizens of every race and color, to his humiliation and damage in the sum of one hundred dollars.

These findings are supported by the following facts in evidence: Each of the tickets purchased by plaintiff provided for admission of one person to such seat as might be assigned its holder by the management. It was of the class of tickets which were honored by giving to those presenting them seats in the rear of the center section of the theater. When the young man was told that he could not sit in the center section of the house he asked the reason for this distinction, and the significant answer was, "You know the reason why"; and, further, "Because you people can't sit there," and, again, "Because it is the orders of the management." The defendant Kehrlein subsequently stated in conversation with the father of the plaintiff that the management put all of the dark races (with whom he included colored persons, Japanese, Chinese, and Mexicans) on the left side, not, as he claimed, because of any prejudice of his own against them, but for the reason that doing otherwise would hurt his business. There is, then, no question that young Jones was refused a seat among those for which his ticket called, and ordered into the section set apart for colored people, Japanese, Chinese, and Mexicans, solely because he was a negro.

[1] The first point made for reversal is that the usher who endeavored to seat Jones in the "dark" section of the theater acted without authority of the management. It was admitted by defendants' counsel at the trial that the usher was acting under the authority of the management. It is now claimed, however, that this stipulation was general in its nature, and did not include acting under authority of the management in doing the specific and tortious act complained of by the plaintiff. The testimony of the plaintiff's father as to Kehrlein's declarations above referred to, accepted as it was by the court, shows that the ushers acted under sweeping general orders of the management to seat all so-called "dark" races in the section to which young Jones was directed. This was authority to discriminate against the plaintiff sufficient to bind the defendant Kehrlein.

The statutory law governing this case is embodied in part II of the Civil Code embracing, among others, the four sec-

tions numbered 51 to 54, inclusive. Section 51, as it existed at the time of the incident out of which this case grows and before it was amended in 1919, provided that all persons within this state are entitled to the full and equal accommodations, advantages, facilities, and privileges of theaters and all other places of public amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens; and at the same time, and before its amendment in 1919, section 52 provided that whoever should violate the provisions of section 51 by denying to any citizen, except for reasons applicable alike to every race and color, the rights enumerated in that section, or whoever should make any discrimination on account of color or race, or except for good cause applicable alike to all citizens of every color or race whatever, in respect to the admission to or treatment in any theater or other place of public amusement, or should aid or incite thereto, should be liable in damages in a sum not less than fifty dollars, which might be recovered in an action at law brought for that purpose.

[2] It is contended that the facts in the record, while showing segregation of the plaintiff, do not establish a discrimination against him. This is another way of saying that the plaintiff's personal rights under part II of the Civil Code were not violated by the act complained of. In support of this contention the appellants cite *Younger* v. *Judah,* 111 Mo. 303, [33 Am. St. Rep. 527, 16 L. R. A. 558, 19 S. W. 1109], a Missouri case. In that case the court of appeals of the state of Missouri held that segregating the negro patrons of a theater in the gallery, and refusing them seats in the orchestra, did not violate the rights of colored citizens under the fourteenth amendment to the constitution of the United States; but it is distinctly said even there that "a discrimination against colored persons by permitting them to sit only in the balcony of a theater is not unlawful in the absence of any statute to the contrary." The fact that there was no Civil Rights Act in Missouri at the time that case arose distinguishes it from the case now before us, and the distinction is clearly pointed out in the Missouri case, where it is said: "This state has enacted no law having any application to the present case. It does not undertake to say how theaters and other places of amuse-

ment shall be managed. As the state does not by itself or through the city of Kansas undertake to regulate theaters, and as the clauses of the fourteenth amendment before noted are prohibitory of state action only, they have nothing to do with the question at hand. There is nothing upon which the prohibition can operate. Many of the states have enacted laws known as 'civil rights statutes,' and we are cited to cases upholding and giving effect to such laws. Under them it has been held that the proprietor of a theater will be liable in damages for refusal to admit a colored person (*Joseph* v. *Bidwell*, 28 La. Ann. 382, [26 Am. Rep. 102]; *Donnell* v. *State*, 48 Miss. 661, [12 Am. Rep. 375]); and for a refusal to admit a colored person to the several circles or grades of seats in a theater. (*Baylies* v. *Curry*, 128 Ill. 287, [21 N. E. 595].)" So that even this case recognizes the force of such statutes as ours.

The appellants also, in support of this contention, cite *Plessy* v. *Ferguson,* 163 U. S. 537, [41 L. Ed. 256, 16 Sup. Ct. Rep. 1138, see, also, Rose's U. S. Notes]. This case arose out of a statute of Louisiana, which provided that railroads operating in that state should furnish different coaches for white and negro passengers, and that neither race should be permitted to occupy the coaches designed for the other. It was there held that such a statute was not in conflict with the fourteenth amendment; but here the question is not the constitutionality of such a statute segregating the races and providing equal accommodation for each. There is no such statute in California nor any similar statute here applicable to theaters.

On the contrary, in a case entitled *People of the State of New York* v. *King,* 110 N. Y. 418, [6 Am. Rep. 389, 1 L. R. A. 293, 18 N. E. 245], both the policy and constitutionality of a statute of the state of New York almost identical with the provisions of our code were strongly upheld; and in *Ferguson* v. *Gis,* 82 Mich. 358, [21 Am. St. Rep. 576, 9 L. R. A. 589, 46 N. W. 718], the supreme court of Michigan upheld a statute similar to our own code provisions. There is no doubt as to where the weight of authority lies on this point. It upholds such statutes, and also holds that conduct such as that of the defendants toward plaintiff constitutes a discrimination against the negro on account of his color and race in violation of his

rights under such Civil Rights Bills. The construction placed upon the acts of defendant Kehrlein by the trial court is that the refusal to seat Jones in any other portion of the house than that set apart for the so-called colored races constituted an illegal discrimination against him under sections 51 and 52 of the Civil Code.

[3] A further point is made to the effect that the provisions of the ticket by which the holder was to be admitted to such seat as might be assigned by the management gave the management the absolute right to assign to the holder any seat which they might designate, including a seat in what might be called the segregated section. It is true that the management had the right to adjust the seating of its audience, as the manager claimed on the witness-stand, and to select within legal bounds and for legal reasons the seats of its various patrons holding this form of ticket; but if this provision of the ticket is to be interpreted as giving them the right to seat young Jones and his girl friend in the segregated section because of his race or color, the provision of the ticket is to that extent illegal and void; for the right to full and equal treatment, as prescribed in section 51 of the Civil Code, is subject only to conditions and limitations established by law and applicable alike to all citizens. This provision in the ticket, if meant to give the management the right to discriminate against plaintiff in seating him on account of his race and color, is to that extent illegal and void.

It is also contended that in purchasing the tickets with the provision permitting the management to assign him a seat Jones did so with his eyes open, and that if he did not like the conditions he need not buy. But it is clear that in purchasing the ticket Jones made no contract that bound him to submit to being seated in violation of his legal rights. The language of the ticket conferred and could confer no such right upon the management to discriminate against him in violation of the rights guaranteed him by part II of the Civil Code. The truth is, as found by the court, that the whole transaction with young Jones was tainted from the beginning with illegality arising out of the intent of the management from the start to deprive him of his civil rights under the statute by discriminating against him in

the matter of seating accommodation solely on account of his race, the intent was illegally conceived and illegally carried out by the management of the theater.

[4] The next contention is that the plaintiff does not come within the classes of citizens protected in their civil rights by sections 51 and 52 of the Civil Code because he was a minor. Say the appellants: "The words 'all citizens' taken in connection with section 53 of the same code would mean all citizens over the age of twenty-one. Plaintiff being a minor, the guaranty of the statute does not extend to him because it expressly excludes minors by particular reference to persons over the age of twenty-one. The complaint therefore does not state a cause of action." In support of this, appellants cite *Greenberg* v. *Western Turf Assn.*, 140 Cal. 362, [73 Pac. 1051], in which the right of admission to a place of public amusement is said to have been guaranteed to the plaintiff in that case by law "in common with all other inhabitants of the state over the age of twenty-one." The quoted sentence from the case is the only portion thereof stressed by the appellants in their argument. Other than the inference which can be drawn from these quoted words there is nothing in the case bearing upon the question before us, but the provisions of section 53 of the Civil Code are intended to guarantee admission of all citizens to places of amusement, and the restriction therein as to minors, if the language imports such restriction, is intended only to permit the exclusion of minors from certain classes of public amusements, and this is all that is intended thereby. There is neither pleading nor evidence that young Jones was segregated because he was a minor nor that minors generally were excluded from Kehrlein's show, but, on the contrary, the court finds from convincing evidence that the sole reason for discrimination against the plaintiff was his race and color. Further than this, it may be said that the defendants took the young man's money, and they cannot now be heard to say in court that because the plaintiff was a minor he shall not be permitted to recover for the wrong done him. The plaintiff was not refused the seat he desired because he was a minor, but because he was a negro, and section 53 of the Civil Code was never intended to form a defense to an action by

one whose rights under sections 51 and 52 have been violated.

This seems to dispose of all the contentions of the appellants in the case. The judgment is affirmed.

Waste, P. J., and Richards, J., concurred.