[Civ. No. 12465. Second Dist., Div. One.—June 11, 1941.]

JOSEPH C. SUTTLES et al., Respondents, v. HOLLYWOOD TURF CLUB (a Corporation), Appellant.

Freston & Files and Ralph E. Lewis for Appellant.

Lloyd C. Griffith for Respondents.

YORK, P. J.—This is an appeal from a judgment awarding to each of the respondents the sum of $100 on account of appellant's refusal to admit them to the clubhouse maintained at Hollywood Park, a racetrack operated by appellant corporation at Inglewood.

From the record herein it appears that respondents at a cost of $2.20 each, procured from Gittelson Brothers, an independent ticket agency operating an office at the Biltmore Hotel in downtown Los Angeles, reservations in the form of an order on appellant for the delivery to respondent Suttles of two box seats for the races on July 21, 1938. In addition, respondents procured two tickets of admission to the clubhouse, paying the sum of $2.75 each therefor. When respondents presented their tickets for admission to the said clubhouse, the attendant stated, "You cannot come in here. We do not allow Negroes in this place"; whereupon respondents in an orderly and peaceable manner left the racetrack, although an opportunity was afforded them to be seated in the grandstand, generally referred to as the general admission section, the price of such facility being $1.10 per person.

Respondents instituted the instant action under the so-called Civil Rights Statute of this state, embodied in sections 51 to 54, inclusive, of the Civil Code.

Section 51 entitles all citizens of the state to the "full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating houses, places where ice cream or soft drinks of any kind are sold for consumption on the premises, barber shops, bath houses, theaters, skating rinks, public conveyances and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens."

Section 52 fixes the liability in damages in an amount not less than $100 of anyone who "denies to any citizen, except for reasons applicable alike to every race or color, the full accommodations, advantages, facilities and privileges enumerated in section 51 . . . or whoever makes any discrimination, distinction or restriction on account of color or race . . . ."

Section 53 makes it "unlawful for any corporation, person

or association, or the proprietor, lessee, or the agents of either, of any opera-house, theater, melodeon, museum, circus, caravan, race-course, fair or other place of public amusement or entertainment, to refuse admittance to any person over the age of twenty-one years, who presents a ticket of admission acquired by purchase, or who tenders the price thereof for such ticket, and who demands admission to such place. Any person under the influence of liquor, or who is guilty of boisterous conduct, or any person of lewd or immoral character, may be excluded from any such place of amusement.''

Section 54 provides that any person who is refused admission to any place of amusement contrary to the provisions of section 53, *supra,* is entitled to recover his actual damages and $100 in addition thereto.

It is clear from the record that when respondents presented their tickets for admission to the clubhouse, a reserved section maintained at the racetrack and open to the public in general, they were denied entry on the ground that they were members of the Negro race.

Appellant summarizes its argument by asserting in its brief that respondents' ''right of recovery hereunder must be based upon section 53 of the Civil Code and that section 53, while prohibiting refusal of *admission,* does not go so far as does Civil Code, 51, which section prohibits discrimination between facilities or accommodations offered. It is therefore urged that with respect to a race course such as is here involved there is nothing unlawful and nothing which would give rise to a ground for civil action in denying (respondents) admission to a particular facility, so long as there was no refusal of admission to the race course as such.'' In other words, appellant argues that ''no place which is specifically listed, for instance, in section 53, but which is not listed in section 51, can be included in the latter statute under the general or catch-all language there'', to wit: ''and all other places of public accommodation or amusement.''

In 10 Am. Jur. 916, it is stated in reference to this subject as follows: ''Theaters and like places of a public or *quasi*-public character are generally held to be included within the operation of statutes which forbid discrimination on account of race or color in places of public amusement. Such a statute is violated if the proprietor of a theater denies to a col-

ored person, on account of his race and color, access to his theater or to the several circles or grades of seats therein, as where a negro, because of his race and color, is denied admission to any part of the theater except the gallery. *A general clause in a civil rights statute, such as 'any other place of public accommodation or amusement,' includes* a public roller skating rink, *a race track,* a public dancing pavilion, and a pleasure resort with a bowling alley maintained as a part thereof.'' (Emphasis added.)

 It would therefore appear that section 53 of the Civil Code does not exclude respondents from bringing their action under section 51, notwithstanding the fact that a racecourse is not specifically enumerated in the latter section.

The leading civil rights case in this state is that of *Jones* v. *Kehrlein,* 49 Cal. App. 646 [194 Pac. 55], in which the facts there involved are stated in the opinion as follows: ''The plaintiff is a minor, a citizen of the United States and a negro. The defendants conduct a moving picture show at Fresno, and on June 20, 1918, sold to plaintiff two tickets to the show, upon presentation of which plaintiff and his young woman friend were admitted to the show-room. He was thereupon directed by an usher, acting under general orders from the management, to seats on the right side of the house which were set apart by the management for the use of what the defendants termed 'the dark races'. The boy declined to follow the direction of the usher, and requested a seat in a part of the house not so set aside, namely, in the rear of the center section where, incidentally, there were plenty of vacant and unsold chairs. The ticket was of the kind which in the hands of one not of the 'dark races' admitted the holder to seats in this latter section of the house. This request on his part was refused, and he and his companion thereupon left the theater. He subsequently brought this action to recover five thousand dollars as damages because of the incident, and was awarded judgment for one hundred dollars.''

It was there held (at p. 651) that the refusal to seat Jones in any other portion of the house than that set apart for the so-called colored races constituted an illegal discrimination against him under sections 51 and 52 of the Civil Code, and that ''the whole transaction with young Jones was tainted from the beginning with illegality arising out of the intent

of the management from the start to deprive him of his civil rights under the statute by discriminating against him in the matter of seating accommodations solely an account of his race; the intent was illegally conceived and illegally carried out by the management of the theater.''

It was further stated, in the cited case at page 650, that ''Many of the states have enacted laws known as 'civil rights statutes,' and we are cited to cases upholding and giving effect to such laws. Under them it has been held that the proprietor of a theater will be liable in damages for refusal to admit a colored person (*Joseph* v. *Bidwell*, 28 La. Ann. 382 [26 Am. Rep. 102]; *Donnell* v. *State*, 48 Miss. 661 [12 Am. Rep. 375]); and for a refusal to admit a colored person to the several circles or grades of seats in a theater. (*Baylies* v. *Curry*, 128 Ill. 287 [21 N. E. 595].)''

In the recent case of *Evans* v. *Fong Poy*, 42 Cal. App. (2d) 320 [108 Pac. (2d) 942], it was held that the language of the Civil Code sections guaranteeing to all citizens full and equal accommodations, advantages, facilities and privileges of the enumerated establishments, and all other places of public accommodation or amusement, covers public bars or saloons, and hence covers refusal to serve a person at a public bar in a cafe because of his race or color.

So far as is shown by the record herein, tickets for either the grandstand or the clubhouse at Hollywood Park are available to all citizens alike, who conduct themselves properly on the grounds and who have money to buy the tickets. It is admitted by appellant that the respondents purchased tickets to the clubhouse and were refused admission thereto because they were Negroes. This is clearly a violation of the statute.

The judgment appealed from is therefore affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied July 1, 1941. Doran, J., voted for a rehearing.

Appellant's petition for a hearing by the Supreme Court was denied August 7, 1941.