Filed 8/26/20  Davis v. Krivacic CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LAMBERT DAVIS, | C089084 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201800232022CUDFGDS) |
| v. | |
| JOHN KRIVACIC et al., | |
| Defendants and Respondents. | |

Plaintiff Lambert Davis appeals after the trial court dismissed his case after sustaining the demurrer of defendants John Krivacic and the Sacramento Kings, LP (the Kings) without leave to amend.  Davis alleged a single cause of action under the Unruh Civil Rights Act[1] (the Act), in that defendants treated him unequally because of his race when Krivacic, a Kings employee, embarrassed and defamed him at the will call booth while Davis picked up tickets and VIP passes left for him by a visiting player.  Davis then

---

[1]    Civil Code section 51.  Further section references are to the Civil Code unless otherwise indicated.

1

gave the tickets to his brother and a friend. They attended the game without incident. The court found Davis failed to state a cause of action under the Act because he failed to allege defendants denied him access or otherwise subjected him to unequal treatment. We disagree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Davis is well known among professional and minor league sporting teams for his cheesecake. He often exchanges cheesecake with visiting and home players for tickets to their Sacramento-area games. He regularly gifts these tickets to family and friends.

On March 29, 2018, Davis picked up tickets and VIP passes to a Kings's game at the will call booth left for him by a visiting basketball player. As Davis showed his driver's license to an employee holding his tickets, her supervisor, Krivacic, "reached over her shoulder, snatched the ticket envelope and rifled through the contents." Krivacic did not do this for anyone else and this created the impression Davis was not entitled to the tickets. Krivacic's actions embarrassed and humiliated Davis in front of a crowd. Krivacic then gave the tickets back to the employee, who handed them to Davis. Davis walked toward the street and gave one ticket to his brother and the other to a friend, before going home. Krivacic watched Davis and, without investigation, reached the false

---

[2]　This case is related to a prior case filed in this court. (See *Davis v. Sacramento River Cats Baseball Club, LLC* (Sept. 19, 2019, C086840) [nonpub. opn.].) Davis seeks to incorporate the record of that case "as background" by citing its case number. Davis should have moved for judicial notice. (Evid. Code, § 452, subd. (d); Cal. Rules of Court, rule 8.1115(b)(1).) In any event, we see no need to judicially notice the record in Davis's prior appeal. Davis alleged the facts of his prior case in this complaint, and because we are reviewing a judgment after demurrer, we must consider those facts true. (See *Estate of Dito* (2011) 198 Cal.App.4th 791, 800-801 [" ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law' " ' "].) Further, the record in Davis's prior case cannot supplement the allegations in this complaint, making the record irrelevant. (See *Thorburn v. Department of Corrections* (1998) 66 Cal.App.4th 1284, 1287-1288 [when testing the adequacy of a plaintiff's pleadings on a demurrer we are confined to the four corners of the complaint].)

conclusion Davis sold the tickets he had just received and voiced that false conclusion to his staff. Krivacic continued to gesture toward Davis and speak loudly to staff about Davis within earshot of a crowd.

"Krivacic drew the same false conclusion three years before when he was the box office manager for the Sacramento River Cats Baseball Club [(the River Cats)]." There, he posted a copy of Davis's driver's license in the visitor's clubhouse on a handprinted sign stating: "THIS PERSON GOES BY 'WAYNE DAVIS' AND IS A TICKET SCALPER. PLEASE DO NOT REQUEST TICKETS FOR HIM. HE SCAMS PEOPLE. THANKS!" Krivacic also refused to provide tickets to Davis at the River Cat's venue, accusing Davis of belonging to a group of African American men scalping large amounts of tickets after picking them up from the will call booth. Davis sued both Krivacic and the River Cats for violation of the Act based on this conduct. That litigation was pending on appeal when the alleged conduct in this case occurred.[3]

"Krivacic had a history of racial discrimination against [Davis], an African American man" and "Krivacic continued the same pattern and practice of racial discrimination" when interacting with him at a Kings's game. "Krivacic's conduct [on behalf of the Kings] of intercepting tickets, which were legitimately left for [Davis] at Will Call, then gesturing toward him as if he were on the premises for an illegitimate reason, followed the pattern and practice of [Krivacic's] conduct toward [Davis]. Krivacic singled [Davis] out from the crowd giving the appearance to bystanders that he was engaged in wrongful activity. No one else approaching the Will Call table was

---

[3] We have since remanded that case to the trial court to reconsider barring the defendant's anti-SLAPP motion under Code of Civil Procedure section 425.16 for being untimely based on a recent change in the law. (*Davis v. Sacramento River Cats Baseball Club*, *LLC*, *supra*, C086840.) SLAPP is an acronym for "strategic lawsuit against public participation." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 639.)

singled out as if they were doing something wrong." With his conduct, Krivacic intended "to exclude [Davis] from [the] Golden One Center because of his previous complaint of race discrimination."

Davis sued both Krivacic and the Kings. His cause of action under the Act was the sole survivor of an anti-SLAPP motion Davis does not challenge on appeal.

Defendants filed a demurrer to the complaint and its sole remaining cause of action under the Act. Defendants requested, and the court granted, judicial notice of several documents, including the complaint Davis filed against Krivacic and the River Cats and the minute order regarding their anti-SLAPP motion against Davis. The court agreed with defendants that Davis failed to allege they "denied [him] access or otherwise subject[ed] [him] to unequal treatment" and sustained the demurrer without leave to amend, thus dismissing Davis's case.

Davis appeals.

DISCUSSION

Davis contends his complaint stated a cause of action under the Act because he alleged defendants treated him unequally as a result of the prior lawsuit he filed against Krivacic under the Act. Defendants counter Davis has not alleged facts establishing he was denied equal accommodations; thus the court properly sustained the demurrer. They further argue defendant has not demonstrated that if unequally accommodated, it was based on his race or as retaliation for previously filing a lawsuit against Krivacic. We conclude Davis alleged he was denied equal accommodations based on his race. In so concluding, we do not decide whether plaintiff has stated a cause of action based on a retaliation theory or whether that theory is available under the Act. (Compare *Gayer v.*

4

*Polk Gulch, Inc.* (1991) 231 Cal.App.3d 515, 521 with *Vaughn v. Hugo Neu Proler International* (1990) 223 Cal.App.3d 1612, 1620.)[4]

When considering a trial court order sustaining a demurrer without leave to amend, we first review the complaint de novo to determine whether it contains facts sufficient to state a cause of action under any legal theory. (*Estate of Dito*, *supra*, 198 Cal.App.4th at p. 800.) " ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.]" ' 'We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory. [Citations.] We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.' " (*Ibid*.)

The Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (§ 51, subd. (b).) "The purpose of the Act is to create and preserve 'a nondiscriminatory environment in California business establishments by "banishing" or "eradicating" arbitrary, invidious discrimination by such establishments.' [Citations.] 'The Act stands as a bulwark protecting each person's

---

[4] Defendants argue Davis fails to address in his opening brief the court's finding he was not unequally accommodated, and we should consider the issue forfeited as a result. We agree Davis's argument is somewhat confusing in that he framed it as a standing issue, which is not the case. The substance of Davis's argument, however, is that he personally experienced defamation and harassment at the hands of Krivacic, meeting the standard of unequal accommodations under the Act. While defendants agree Davis has standing, they disagree that Krivacic's conduct amounted to unequal treatment.

inherent right to "full and equal" access to "all business establishments." [Citations.]'
[Citation.]  In enforcing the Act, courts must consider its broad remedial purpose and
overarching goal of deterring discriminatory practices by businesses.  [Citations.]  [Our
Supreme Court] ha[s] consistently held that 'the Act must be construed liberally in order
to carry out its purpose.' " (*White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1025.)

Because "[t]he objective of the Act is to prohibit businesses from engaging in
unreasonable, arbitrary or invidious discrimination" (*Pizarro v. Lamb's Players Theatre*
(2006) 135 Cal.App.4th 1171, 1174), the Act applies not merely in situations where
businesses exclude individuals altogether, but also "where unequal treatment is the result
of a business practice" (*Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 29).  "Unequal
treatment includes offering price discounts on an arbitrary basis to certain classes of
individuals." (*Pizarro*, at p. 1174.)  "Several early cases found violations of this Act and
its predecessor when blacks were allowed to enter business establishments but were
restricted to certain portions of the premises.  (See, e.g., *Jones v. Kehrlein* (1920) 49
Cal.App. 646, 651 . . . [black ticketholders admitted to theatre but restricted to seating in
segregated section]; *Suttles v. Hollywood Turf Club* (1941) 45 Cal.App.2d 283, 287 . . .
[black ticketholders admitted to racetrack but denied clubhouse seating].)  In *People v.
McKale* (1979) 25 Cal.3d 626 . . . , the plaintiff alleged 'a pattern of discriminative
conduct' by defendant mobilehome park against applicants and tenants, 'varying from
instances of abusive language . . . to discriminative sales and leasing policies.'  [Our
Supreme Court] concluded that such discrimination was 'clearly unlawful' under the
Unruh Act and held that plaintiff had adequately stated a cause of action.  [Citation.]

"In *Hutson v. The Owl Drug Co.* (1926) 79 Cal.App. 390 . . . , a black plaintiff was
allowed to sit at a soda fountain, but the employee 'placed [her order] amongst dirty
dishes on the counter.'  [Citation.]  Another employee then struck the plaintiff and threw
a cup of coffee on her.  [Citation.]  The court held that the plaintiff 'was not accorded the

6

same accommodations, advantages, facilities and privileges' due persons of all races." (*Koire v. Metro Car Wash*, *supra*, 40 Cal.3d at p. 29.)

The same can be said here. Davis alleged in his complaint that Krivacic embarrassed and defamed him when Davis picked up tickets from the Kings's will call booth. That Davis never intended to attend the basketball game and his brother and friend were allowed access to the basketball game as any other customer is irrelevant. Our focus is on the treatment of Davis at the publicly accessible will call booth, where Kings's employees engaged in the service of holding and dispersing tickets. Indeed, Davis alleged he was engaged in the lawful conduct of gifting tickets given to him by a visiting basketball player. Davis further alleged Krivacic's embarrassing and defamatory treatment, directed at Davis alone, was designed to deter Davis from accessing the will call booth and Kings's games for lawful purposes. This is similar to *Hutson*, where the court concluded a violation of the Act occurred even though the plaintiff was allowed access to the business. It was the employees' actions of embarrassing, humiliating, and assaulting her that constituted a violation of the Act. (*Hutson v. Owl Drug Co.*, *supra*, 79 Cal.App at pp. 392-393.) Accordingly, because Davis alleged he was the subject of treatment no other person experienced, Davis has alleged unequal services for purposes of the Act. (§ 51.)

Davis alleged Krivacic's unequal treatment was arbitrary because it was based on his race, as evidenced by Krivacic's similar treatment of him when Krivacic worked for the River Cats and accused him of being part of an African American group of men scalping large amounts of tickets. Citing *Frantz*, defendants argue these allegations are insufficient to establish defendants treated Davis unequally based on his race as opposed to personal character traits. (*Frantz v. Blackwell* (1987) 189 Cal.App.3d 91.)

In *Frantz*, a developer, who had previously been sued by an investor-speculator, refused to sell the speculator property after the first litigation was settled. The court held the developer's refusal did not constitute arbitrary discrimination within the meaning of

7

the Act because it was based on the speculator's individual conduct giving rise to the previous suit, as opposed to his status as a prior adverse litigant.[5] (*Frantz v. Blackwell*, *supra*, 189 Cal.App.3d at pp. 93, 95.) The court based this conclusion on a review of documents attached to the complaint establishing the litigation history between the parties. These documents demonstrated the prior litigation originated with the speculator's fraudulent statements and business practices. The documents further established the developer's refusal to conduct business with the speculator was due to those characteristics and not because the speculator previously filed suit against him. (*Id.* at p. 94.) The court ultimately concluded the developer's treatment of the speculator was not arbitrary because the developer had legitimate reasons to eschew a speculator who took parasitic advantage of the developer's marketing strategies and assumed none of the risk. (*Id.* at p. 96.)

Defendants' reliance on *Frantz* is misplaced. The *Frantz* court was able to determine the developer's motives from exhibits attached to the complaint, the facts of which were incorporated into the complaint and considered true. (*Frantz v. Blackwell*, *supra*, 189 Cal.App.3d at p. 94.) The same is not true here. To the extent defendants argue the judicially noticed documents from Davis's litigation against Krivacic and the River Cats shed doubt on his allegations of race discrimination, that argument must fail. Judicial notice does not allow us to consider the facts contained in the judicially noticed documents true, unless those facts also meet the standards for judicial notice. (*Barri v. Workers' Comp. Appeals Bd.* (2018) 28 Cal.App.5th 428, 437 ["[i]t is improper to rely on

---

[5]     While previously being an adverse litigant is not an enumerated class, "the 'identification of particular bases of discrimination -- color, race, religion, ancestry, and national origin -- . . . *is illustrative rather than restrictive*. [Citation.] Although the legislation has been invoked primarily by persons alleging discrimination on racial grounds, its language and its history compel the conclusion that the Legislature intended to prohibit *all arbitrary discrimination by business establishments*.' " (*Frantz v. Blackwell*, *supra*, 189 Cal.App.3d at p. 95.)

judicially noticed documents to prove disputed facts because judicial notice, by definition, applies solely to undisputed facts"].) Thus, we cannot question the credibility of the allegations in Davis's complaint based on defendants' version of events as contained in a prior pleading or court ruling. Our role on demurrer is to scrutinize the complaint for allegations sufficient to state a cause of action under the Act. (See *Estate of Dito*, *supra*, 198 Cal.App.4th at pp. 800-801.) Because Davis alleged his unequal treatment was because Krivacic assumed, due to Davis's race, that he was a ticket scalper who associated with an African American ticket scalping group, he has met his burden.

DISPOSITION

The judgment is reversed. Davis is awarded costs. (Cal. Rules of Court, rule 8.278(a)(2).)


/s/
Robie Acting P. J.



We concur:



/s/
Murray, J.



/s/
Krause, J.