[No. H001473. Sixth Dist. Jan. 8, 1987.]

PHILLIP J. FRANTZ, Plaintiff and Appellant, v.
JACK R. BLACKWELL et al., Defendants and Respondents.

COUNSEL

M. Dean Sutton for Plaintiff and Appellant.

Michael E. Stone and Stone, Clayton & McEvoy for Defendants and Respondents.

OPINION

AGLIANO, P. J.—Phillip J. Frantz appeals from a judgment of dismissal entered after the trial court sustained a demurrer without leave to amend. We affirm.

Frantz sued Jack R. Blackwell, Jack R. Blackwell, Inc., and Blackwell Homes, Inc., in a first amended complaint alleging discrimination violative of the Unruh Civil Rights Act, Civil Code section 51 et seq., and of the common law doctrine concerning enterprises affected with a public calling (a third cause of action was merely a prayer seeking to enjoin the discrimination which was alleged in the first two causes of action). The operative allegation of discrimination had its genesis in a prior encounter between these litigants.

Frantz is a licensed real estate broker or agent. Blackwell develops and sells single family homes to the public. On August 1, 1979, Frantz contracted to purchase from Blackwell lot 282 of Pierce Ranch subdivision No. 3, located in San Jose. After a disagreement, Blackwell rescinded the contract on September 20, 1979. Frantz, however, sued for specific performance. The suit was dismissed on September 22, 1980, after a settlement was reached whereby Blackwell paid Frantz $35,000.

In May 1984, Frantz tried to contract to purchase from Blackwell lot 448 of Pierce Ranch, but Blackwell refused to deal with Frantz.

Frantz then filed the instant action on November 28, 1984, wherein he alleges that Blackwell's refusal to sell was discriminatory in that it was solely because of "the fact that plaintiff had sued BLACKWELL in a prior lawsuit and had obtained a financially successful out of court settlement [and that] . . . [¶] plaintiff was a member of and represented a class or group with whom BLACKWELL did not want to conduct business—that is, persons who had filed lawsuits against BLACKWELL . . . ." It was to this allegation that Blackwell generally demurred.

Frantz's original complaint in this action incorporated by reference and attached as exhibit A Frantz's prior complaint against Blackwell for specific performance. This complaint incorporated by reference an exhibit C, Blackwell's notice of rescission of contract. This notice of rescission indicated Blackwell's reasons for rescinding the contract for lot 282. Apparently, as part of the contract, Frantz signed an owner-occupancy agreement indicating he was purchasing the lot as an owner-occupant. Frantz previously closed escrow on lot 159 of Pierce Ranch. When Blackwell discovered this, it concluded Frantz was purchasing as an investor-speculator rather than an owner-occupant. Frantz's first amended complaint in this action incorporated by reference and attached as exhibit B a letter from Blackwell to Frantz dated October 16, 1984. This letter explained the reasons Blackwell refused to deal with Frantz. Blackwell claimed Frantz purchases units in new developments, delays escrow closing, and attempts to resell the units before his escrow closes, using the time delay and Blackwell's promotional efforts on the balance of subdivision units to create a profit. If he cannot resell, Blackwell claimed, Frantz can merely default on the Frantz-Blackwell contract. Blackwell maintained that Frantz's prior suit was without merit and that it was settled as a nuisance because of business circumstances and that Blackwell told Frantz at the time of settlement that it would have no further business dealings with Frantz. These are evidentiary facts found in recitals of exhibits attached to a complaint or superseded complaint which can be considered on demurrer. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 387, 411, 412, pp. 436, 458-459; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 896, p. 337.)

■ On appeal we consider these facts true and independently determine whether a cause of action is stated under the rule that " 'if upon a consideration of all of the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good . . . .' [Citation.]" (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].) The issue here is whether Blackwell's refusal to do business with Frantz is arbitrary discrimination.

Our inquiry begins with the relevant statutes and leading case authority.

In California, "[a]ll persons within the jurisdiction of this State are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51.) "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, or sex of such person . . . ." (Civ. Code,

§ 51.5.) Civil Code section 52 provides civil remedies for violations of sections 51 and 51.5.

The Supreme Court has twice spoken on its interpretation of the Unruh Act, most recently in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, at page 732 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]: "After reviewing the common law origin, the legislative history and the past judicial interpretations of the act and its statutory predecessors, our court unanimously concluded in *Cox* that the 'identification of particular bases of discrimination—color, race, religion, ancestry, and national origin—. . . *is illustrative rather than restrictive.* [Citation.] Although the legislation has been invoked primarily by persons alleging discrimination on racial grounds, its language and its history compel the conclusion that the Legislature intended to prohibit *all arbitrary discrimination by business establishments.'* (Italics added.) (3 Cal.3d at p. 216.)" The court noted, at page 736, that decisions by appellate courts and opinions of the Attorney General have explicitly concluded, in a variety of contexts, that the Unruh Act covers a wide range of discriminatory practices such as policies against students, welfare recipients, those of a particular occupation or marital status, or those who associate with blacks. In the case before it, the Supreme Court invalidated a policy against children. In the prior case referred to in the opinion, *In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992], the policy invalidated was one against "hippies." So we are mindful that the basis of discrimination alleged in this case is not beyond the scope of the Unruh Act simply because it is not included within the act's terms or court precedent.

However, evidentiary facts were before the trial court in the exhibits incorporated in plaintiff's complaint. Thus, Frantz alleged Blackwell discriminated because Blackwell believed Frantz was a speculator who had previously tried to profit at Blackwell's expense despite a signed agreement to the contrary. Such exclusion is not the singling out of an undefined group, such as "hippies" or making generalizations about a defined group, such as children. Such exclusion is personal, that is, toward a particular individual based upon that individual's conduct. ■ "A business establishment may, of course, promulgate reasonable deportment regulations that are rationally related to the services performed and the facilities provided." (*In re Cox, supra,* 3 Cal.3d at p. 217.)

Individualized treatment of others without regard to status seems to be the aim of a civil rights statute such as the Unruh Act. ■ "[E]ntrepreneurs unquestionably possess broad authority to protect their enterprises from improper and disruptive behavior, [and] under the Unruh Act entrepreneurs must generally exercise this legitimate interest directly by excluding those persons who are in fact disruptive. Entrepreneurs cannot

pursue a broad *status-based exclusionary policy* that operates to deprive innocent individuals of the services of the business enterprise to which section 51 grants 'all persons' access." (*Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d at p. 740, italics added, fn. omitted.) There was no Unruh Act violation in *Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288 [131 Cal.Rptr. 547], where a tenant's instigation of a rent strike singled her out for her landlord's exclusionary attention. It was not arbitrary under the Unruh Act to single out and exclude a person who gambled with money obtained from the gambling parlor by cashing a bad check. (*Wynn* v. *Monterey Club* (1980) 111 Cal.App.3d 789 [168 Cal.Rptr. 878].) The significant feature of these cases is that the person's conduct, as opposed to his status, produced the discrimination alleged to be arbitrary (see *Marina Point, Ltd.* v. *Wolfson, supra,* at pp. 740-741, fn. 9). ■ The Unruh Act seeks to remedy arbitrary discrimination. It does not seek to remedy traditional wrongs arising out of tort or breach of contract, nor does it seek to remedy discrimination based on purely personal grounds.

■ Here, the reason Blackwell refused to deal with Frantz goes beyond the bare fact that Frantz once sued Blackwell. Whether Frantz "won" the suit or Blackwell "settled a nuisance" is beside the point. Blackwell sells new homes. There are obvious reasons why Blackwell would not wish to sell a home to an investor-speculator. As suggested by Blackwell, the investor-speculator is merely taking parasitical advantage of the developer's skills. We cannot say a developer's refusal to sell a home to a perceived investor-speculator is unreasonable. Blackwell successfully demurred to the original complaint; the first amended complaint merely adds the allegation that Frantz belongs to a group of plaintiffs with whom Blackwell refuses to deal. There is nothing more to add. Accordingly, the demurrer was properly sustained without leave to amend. "Because the Unruh Civil Rights Act is a codification of the common law doctrine concerning enterprises affected with a public calling, plaintiffs' second cause of action is an alternative, common law pleading which rests upon the same bases as their cause of action stated under the Unruh Civil Rights Act. Our discussion in the preceding section concerning violation of the Unruh Civil Rights Act is therefore applicable to the alternative, common law pleading of the second cause of action." (*Leach* v. *Drummond Medical Group, Inc.* (1983) 144 Cal.App.3d 362, 372 [192 Cal.Rptr. 650].) We therefore conclude, for the same reasons, that Frantz also fails to state a cause of action for the violation of the duty of an enterprise affected with a public interest to serve all members of the public on reasonable terms without discrimination.

The judgment is affirmed.

Brauer, J., and Capaccioli, J., concurred.

A petition for a rehearing was denied January 28, 1987, and appellant's petition for review by the Supreme Court was denied March 25, 1987.