[No. B044910. Second Dist., Div. Five. Sept. 25, 1990.]

GRACE VAUGHN, Plaintiff and Appellant, v.
HUGO NEU PROLER INTERNATIONAL et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication with the exception of parts III(B)(2) through III(H).

COUNSEL

Sievers, Haigh & Minsky and Larry Minsky for Plaintiff and Appellant.

Hill, Farrer & Burrill, Jonathan M. Brandler, Jack R. White, Neil D. Martin and Ondrea Dae Hidley for Defendants and Respondents.

OPINION

TURNER, J.—

## I. PROCEDURAL HISTORY

On April 19, 1989, Plaintiff, Grace Vaughn, filed a complaint for damages and injunctive relief against defendants Hugo Neu Proler International (Neu), Proler International Corporation, Neil Kerney and Jack Fletcher (Fletcher). The complaint alleged causes of action for violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.)[1] (first), intentional and

---

[1] Unless otherwise noted, all further statutory references are to the Civil Code.

negligent interference with prospective business advantage (second and third), intentional infliction of emotional distress (fourth), negligent infliction of emotional distress (fifth) and civil conspiracy (sixth).

Defendants filed special demurrers to the first and fourth causes of action and general demurrers to all causes of action. The trial court sustained all the demurrers on the grounds stated in the demurrers. Plaintiff chose not to amend the complaint and stipulated to a dismissal of the action pursuant to Code of Civil Procedure section 581, subdivision (f)(2). Plaintiff filed a timely notice of appeal from the order granting dismissal. We affirm the dismissal of the cause of action for intentional infliction of emotional distress in the fourth cause of action but reverse the dismissal of all other causes of action. In the published portion of this opinion, we discuss the correctness of the trial court's order sustaining a demurrer to plaintiff's cause of action premised on the Unruh Civil Rights Act.

## II. FACTS

Pursuant to settled case law, we assume the truth of all properly pleaded material allegations of the complaint. (*Phillips* v. *Desert Hospital Dist.* (1988) 210 Cal.App.3d 1060, 1065 [243 Cal.Rptr. 196].) Plaintiff alleged that she was in the business of procuring and selling scrap metal to various scrap metal processing and distribution centers. Plaintiff entered into various oral agreements with third parties to assist her in procuring and selling scrap metal. Defendants were aware of the agreements.

The complaint further alleged that all defendants owned and operated a scrap metal processing and distribution facility on Terminal Island. On May 29, 1985, plaintiff filed a lawsuit (L.A. Super. Ct. case No. C549491) against Neu in which it was alleged that she and other females were not permitted to enter defendants' business in order to assist in the unloading of scrap metal although men were permitted to do so. The suit sought relief under the Unruh Civil Rights Act based on Neu's discrimination against plaintiff because she was a woman. That gender discrimination action was resolved in April 1986.

Following settlement of that lawsuit, defendants sporadically allowed plaintiff access to unwanted scrap metal at the Terminal Island facility. Defendants had scrap metal which they could not use and allowed other scrap metal dealers to enter their premises to remove the unwanted scrap metal. Eventually, in February 1989, plaintiff and persons acting on her behalf were refused access to the property to pick up the unwanted scrap metal. Defendants also refused to purchase scrap metal from plaintiff or her assistants. Persons other than plaintiff and her assistants were allowed free

egress from and ingress onto defendants' property to pick up discarded scrap metal. Persons other than plaintiff and her assistants were also allowed to pick up abandoned metal from surrounding areas and from the truck beds of other scrap metal sellers. Defendants prohibited plaintiff from entering adjoining property to pick up discarded scrap metal.

On January 20, 1989, while plaintiff was on the property adjoining defendants' premises, defendants advised the Port of Los Angeles Police Department that plaintiff was trespassing and requested that she be arrested. Nearly one month later on February 15, 1989, one of plaintiff's assistants was injured by Fletcher who was acting on behalf of the other defendants. Fletcher struck and grabbed plaintiff's assistant as he attempted to procure unwanted scrap metal from the property next to defendant's scrap metal business. Plaintiff alleged that defendants' actions were taken in retaliation for the underlying gender discrimination lawsuit filed in May 1985 by her against Neu, which had been settled.

## III. DISCUSSION

### A. *Standard of Review*

In this appeal, plaintiff challenges the trial court's order sustaining the special and general demurrers. ■ Where a plaintiff is given the opportunity to amend the complaint and chooses not to do so, an appellate court is required to construe the complaint strictly and to presume that the plaintiff has stated as strong a case as possible. (*Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681].) A judgment of dismissal must be affirmed if the complaint is objectionable on any ground raised by the demurrer. (*Ibid.*)

### B. *The First Cause of Action Under the Unruh Civil Rights Act*

Plaintiff contends that the trial court abused its discretion in sustaining general and special demurrers to her first cause of action for violation of the Unruh Civil Rights Act (§ 51 et seq.). For the reasons stated below, we conclude that both demurrers should have been overruled.

#### 1. General Demurrer

■ Defendants contend that since plaintiff was not a member of a class when she filed the lawsuit in this case she has no claim under the act. They claim that they are free to discriminate against any "individual." Section 51 provides in part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry,

national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges or services in all business establishments of every kind whatsoever." ■ The Supreme Court has held that the conduct that is enumerated in section 51 is illustrative rather than restrictive. (*In re Cox* (1970) 3 Cal.3d 205, 212 [90 Cal.Rptr. 24, 474 P.2d 992].) Both the language of the statute and its history "disclose a clear and large design to interdict all arbitrary discrimination by a business enterprise." (*Ibid.*)[2] "The act protects all persons from arbitrary discrimination . . . ." (*O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790, 795 [191 Cal.Rptr. 320, 662 P.2d 427].) It is not limited to a category of "protected classes." (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 730 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) The statutory right afforded "all persons" by section 51 is of an individual nature. (*Id.* at p. 738.) Section 51 was derived "from the common law doctrine which imposed upon certain enterprises affected with a public interest ' "the duty to serve *all* customers on reasonable terms without discrimination." ' [Citation.] Under this common law principle, each member of the public, as an individual, possessed the right to obtain services of such enterprises. [Citations.] [¶] The rights afforded by the Unruh Act similarly are enjoyed by all persons, as individuals." (30 Cal.3d at p. 738.)

■ Defendants urge this court to narrowly construe the language in *Cox* and *Marina Point* which hold business establishments cannot discriminate against classes of persons to mean that the statute is limited to persons who have been identified as members of a particular class. Such a construction would be inconsistent with the express language of the statute which does not limit the application of the statute to identifiable members of a particular class but includes "all persons." There are also numerous cases which have upheld the rights of an individual to be free from discrimination by business establishments. For example, in *Orloff* v. *Los Angeles Turf Club, Inc.* (1951) 36 Cal.2d 734, 737-739 [227 P.2d 449], a case interpreting pre-Unruh Act civil rights statutes, the Supreme Court concluded that a person who had been convicted of gambling could not be excluded from a race track because of his allegedly immoral character. In *Leach* v. *Drummond Medical Group, Inc.* (1983) 144 Cal.App.3d 362, 370-372 [192 Cal.Rptr.

---

[2] In 1897, the Legislature enacted what later became sections 51 and 52. (Stats. 1897, ch. CVIII, p. 137.) It provided in part: "All citizens within the jurisdiction of this State [are] entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels . . . and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law, and applicable alike to all citizens." Section 51 did not refer to race, religion, or any other specific grounds of discrimination but provided for "full and equal" treatment for "all citizens." The word citizen as used in this section required only that plaintiff be a resident of California. (*Prowd* v. *Gore* (1922) 57 Cal.App. 458, 461 [207 P. 490].) In 1961, the Legislature substituted the term "persons" for "citizens." (Stats. 1961, ch. 1187, § 1, p. 2920.)

650], the Court of Appeal determined that a person who filed a complaint with a state agency against a medical group could not be denied access to the medical facility in retaliation for having filed the complaint. In *Winchell v. English* (1976) 62 Cal.App.3d 125, 128-130 [133 Cal.Rptr. 20], the court held that a person who associated with Blacks could not be discriminated against because of that association. In the case of *In re Cox, supra*, 3 Cal.3d at pages 210-216, the Supreme Court held that a person who associated with a "hippie" could not be excluded from a shopping center due to that association.

Furthermore, the act is to be liberally construed with a view to effecting its object and to promote justice. (§ 4; *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 28 [219 Cal.Rptr. 133, 707 P.2d 195].) Allowing defendants to discriminate against plaintiff because she had previously filed a gender discrimination lawsuit would be contrary to the primary purpose of the act which "is to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the act." (*Curran v. Mount Diablo Council of the Boy Scouts* (1983) 147 Cal.App.3d 712, 733 [195 Cal.Rptr. 325, 38 A.L.R.4th 607].) Having concluded that the terms and primary purpose of the Unruh Civil Rights Act were violated by defendants' alleged conduct, we now distinguish the present case from the principal authority relied upon by defendants and those cases where the act has been held inapplicable for discriminatory conduct by business enterprises.

Defendants rely on *Frantz v. Blackwell* (1987) 189 Cal.App.3d 91, 96 [234 Cal.Rptr. 178], to support their contention that they could retaliate against plaintiff as an individual without violating the act. In *Frantz,* the plaintiff contended that defendant refused to sell him real estate in violation of the act. Defendants' reliance on *Frantz* is misplaced for two reasons. First, *Frantz* did not hold as a matter of law that a defendant could retaliate against a person for filing a complaint against defendant. (*Ibid.*) In fact, the court concluded that the allegation of retaliation which was the basis of the complaint "[was] not beyond the scope of the Unruh [Civil Rights] Act simply because it [was] not included within the act's terms or court precedent." (*Id.* at p. 95.) Second, the court concluded as a matter of law that the discrimination was not arbitrary based upon the plaintiff's conduct as a real estate speculator which was revealed by the judicially noticed exhibits that were attached to the complaint. (*Id.* at pp. 95-96.)

The only cases where courts have upheld discriminatory practices have been where the practice was not arbitrary, was based upon the defendant's

right to exclude a person because of the plaintiff's conduct,[3] because a regulation was adopted for a rational reason which was related to services performed or services provided by the defendant,[4] or the act excluded a particular business from its coverage.[5] ■ A business establishment may place reasonable restrictions on its customers as long as the restrictions are rationally related to the services performed and the facilities provided. (*O'Connor* v. *Village Green Owners Assn., supra*, 33 Cal.3d at p. 794; *Wynn* v. *Monterey Club, supra*, 111 Cal.App.3d at p. 796.) ■ In this case, there were no facts before the court to establish that the defendants were discriminating against plaintiff for any reason other than the fact that she had previously filed a lawsuit against them for sex discrimination. Thus, her exclusion from the premises is not rationally related to the services performed or services provided by defendants. (*Ibid.*) More importantly, exclusion solely on the basis of the previously filed lawsuit was arbitrary and unreasonable pursuant to section 51.

Defendants argue that since the Unruh Civil Rights Act does not specifically provide for a cause of action for retaliation they can discriminate against plaintiff by excluding her from the same privileges as the general public. California "courts have not hesitated to prohibit retaliatory exercises of broad private powers when they interfere with public policy" (*Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507, 515 [90 Cal.Rptr. 729, 476 P.2d 97]) notwithstanding the absence of a statutory cause of action. In *Schweiger*, the Supreme Court upheld a tenant's right against retaliatory eviction prior to enactment of section 1942.5. (*Ibid.*) In *S.P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719, 728-729 [552 P.2d 721], the Supreme Court held that a property owner may not evict a tenant in response to the filing of a suit in federal court by the tenant charging a violation of a federal law. In *Glenn* v. *Clearman's Golden Cock Inn* (1961) 192 Cal.App.2d 793, 795-796 [13 Cal.Rptr. 769], the court held that an employee could not be discharged in retaliation for applying for union membership. In *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 188-189 [344 P.2d 25], the Court of Appeal concluded that an employee was

---

[3] In *Wynn* v. *Monterey Club* (1980) 111 Cal.App.3d 789, 796 [168 Cal.Rptr. 878], the court held that a gambling establishment could exclude a woman with a gambling history that included writing checks against insufficient funds without violating the act.

[4] In *Sunrise Country Club Assn.* v. *Proud* (1987) 190 Cal.App.3d 377, 380, 383 [235 Cal.Rptr. 404], the Court of Appeal held that, although an outright prohibition against children would have been invalid, the act did not prohibit dividing a development into adult and family areas.

[5] In *Schmidt* v. *Superior Court* (1989) 48 Cal.3d 370, 382-383 [256 Cal.Rptr. 750, 769 P.2d 932], our Supreme Court held that a mobilehome park rule limiting residents to adults 25 years or older did not violate the broad antidiscrimination policy of the act. The court found that sections 51.2 and 51.3 clearly indicated the Legislature's intent to exclude mobilehome parks from the act. (*Id.* at pp. 382-384, 386.)

improperly discharged for refusing to give false testimony to an Assembly committee. *Schweiger, S.P. Growers Assn., Glenn,* and *Petermann* are but a few examples of cases where California courts have prohibited the retaliatory exercise of private powers. In the present case, permitting defendants to discriminate against plaintiff in retaliation for exercising a statutory right would be contrary to public policy. Plaintiff alleged in her 1985 complaint that defendants were excluding women from the same privileges and accommodations given to men. Because she chose to challenge unlawful discrimination by filing a lawsuit to correct that illegal practice, defendants have engaged in discriminatory conduct towards her as an individual. The public has a strong interest in preventing business establishments from engaging in discriminatory practices for arbitrary reasons. When a person challenges such practices in a suit filed pursuant to the Unruh Civil Rights Act, the public has an interest in protecting that person from retaliatory conduct by the offending party. Accordingly, the general demurrer to plaintiff's Unruh Civil Rights Act claim should have been overruled.

B.2.-H.*

. . . . . . . . . . . . . . . . . . . . .

## IV.  DISPOSITION

The judgment of dismissal is reversed as to the first, second, third, fifth, and sixth causes of action. The judgment as to the dismissal of the fourth cause of action is affirmed. Plaintiff is to recover her costs on appeal.

Lucas, P. J., and Ashby, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 13, 1990.

---

*See footnote, *ante,* page 1612.