[No. A050821. First Dist., Div. Four. June 21, 1991.]

RICHARD GAYER, Plaintiff and Appellant, v.
POLK GULCH, INC., Defendant and Respondent.

## COUNSEL

Richard Gayer, in pro. per., for Plaintiff and Appellant.

King, Shapiro, Mittelman & Buchman, Mark R. Mittelman and Mark J. Zanobini for Defendant and Respondent.

## OPINION

### ANDERSON, P. J.—

#### I. INTRODUCTION

Richard Gayer (appellant) appeals from a dismissal of the first and fourth causes of action in his first amended complaint. The first cause of action alleged that Polk Gulch, Inc. (respondent), owner of a public drinking establishment, violated the Unruh Civil Rights Act (hereafter the Act) (Civ. Code,[1] §§ 51 and 52), when its employees refused to serve appellant. For this alleged violation of his civil rights, appellant sought punitive damages. The fourth cause of action alleged that respondent permanently excluded him from entering the bar. Appellant sought damages and an injunction to enjoin the bar from continuing to exclude him. Both causes of action were dismissed after the court below sustained respondent's demurrer without leave to amend.

#### II. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arose out of a series of events that took place in respondent's bar on the evening of December 9, 1988. That evening appellant attempted to enter the Polk Gulch Saloon (hereafter Polk Gulch), a public drinking

---

[1] All further statutory references are to the Civil Code.

establishment owned and operated by respondent. An employee of Polk Gulch stopped appellant at the door and, after consulting other employees, informed him that although he was free to enter the bar he would not be served anything to drink. The doorman told appellant that Polk Gulch refused to serve him because he had previously brought an action against the bar in small claims court for a violation of the Act.[2] The small claims suit was ultimately heard and decided in favor of respondent on December 14, 1988. Thus, at the time the incidents giving rise to this lawsuit occurred, the prior lawsuit was still pending.

Appellant seated himself on a bench against the wall inside the bar. While seated, he saw the doorman talking with another customer named Corey Chapman. Shortly thereafter, Mr. Chapman aimed his glass at appellant and "intentionally caused its contents to land squarely in [appellant's] lap." Appellant attempted to call the police, but several Polk Gulch employees prevented him from using the telephone. Mr. Chapman left the bar, and appellant followed him to another bar where he was allowed to use the phone. He called the police and Mr. Chapman was taken into custody. A short while later appellant attempted to reenter Polk Gulch. The doorman prevented him from entering the bar and told appellant that he was permanently excluded from the bar. Appellant alleged that the doorman induced Mr. Chapman to cause appellant to leave the bar and that this inducement was related to the pending lawsuit appellant had filed against Polk Gulch.

On December 13, 1988, appellant filed his original complaint for compensatory and punitive damages and injunctive relief. He alleged that Polk Gulch had violated the Act when it initially refused to serve him and then later permanently excluded him. These acts, he asserted, were in retaliation for his previous discrimination suit against the bar. Respondent successfully demurred to all causes of action. The trial court allowed appellant 30 days to amend his complaint. Appellant filed a first amended complaint which was essentially the same as the original complaint except that an action for premises liability was added. Respondent again demurred. The trial court sustained the demurrer without leave to amend as to three causes and appellant dismissed the remaining two. On appeal appellant raises issues related solely to the first and fourth causes of action.

---

[2]Appellant had brought an action in small claims court alleging that respondent, a gay bar, had discriminated against him because he was gay. (Mun.Ct.S.F. City & County, Small Claims Div. case No. 483 916.)

## III. Discussion

### A. *Standard of Review*

We first note that this appeal followed a judgment of dismissal after respondent's demurrer had been sustained without leave to amend. The purpose of a demurrer is to test the sufficiency of a complaint by raising questions of law. (*Nordlinger* v. *Lynch* (1990) 225 Cal.App.3d 1259, 1271 [275 Cal.Rptr. 684].) Furthermore, the court is to accept as true all allegations of fact contained in the complaint. (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142 [278 Cal.Rptr. 614, 805 P.2d 873].) When a demurrer is sustained the reviewing court must determine whether the complaint states facts sufficient to state a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The lower court will only be reversed for an abuse of discretion if there is a reasonable possibility that the complaint could have been cured by an amendment. (*Ibid.*)

### B. *Appellant Failed to State a Cause of Action for Violation of the Act*

The only question for this court is whether respondent violated the Act when its employees excluded appellant from Polk Gulch[3] in retaliation for his having previously filed a discrimination suit against its owner. Appellant asserts that he is protected from that retaliation under the Act either as an individual or as a member of a class of civil rights litigants. We conclude that the Act does not encompass discrimination based on retaliation and, therefore, we agree with the trial court that appellant has failed to state a cause of action.[4]

Section 51 provides in part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Despite the Act's reference to a set of specifically enumerated protected classes, California courts have stated repeatedly that the

---

[3]Although there has been some dispute in the courts over what constitutes a "business enterprise" within the meaning of the Act, it is well settled that a bar, such as the one owned by respondent, is a "business enterprise." (*Stoumen* v. *Reilly* (1951) 37 Cal.2d 713, 716 [234 P.2d 969] [criticized on other grounds in *Harris* v. *Capital Growth Investors XIV, supra,* 52 Cal.3d at pp. 1154-1155].) Furthermore, respondent has not argued that it is not a "business enterprise."

[4]Although appellant has sought punitive damages we do not reach the issue of whether they are available under the Act because we have determined there is no prerequisite liability.

"identification of particular bases of discrimination—color, race, religion, ancestry, and national origin—. . . is illustrative rather than restrictive." (*In re Cox* (1970) 3 Cal.3d 205, 216 [90 Cal.Rptr. 24, 474 P.2d 992]; *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 732 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].)

The Act has been held to prohibit discrimination based on several classifications which are not specifically enumerated in the statute. In *Cox*, our Supreme Court applied the statute to prohibit discrimination by a shopping mall against someone because he associated with a young man "who wore long hair and dressed in an unconventional manner." (*In re Cox, supra*, 3 Cal.3d at p. 210.) Other examples of application of the Act to nonenumerated classifications include: *Marina Point, Ltd.* v. *Wolfson, supra*, 30 Cal.3d at pp. 736-741 (tenants with children); *O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790, 794 [191 Cal.Rptr. 320, 662 P.2d 427] (persons under the age of 18); *Rolon* v. *Kulwitzky* (1984) 153 Cal.App.3d 289, 292 [200 Cal.Rptr. 217] (sexual preference); and *Long* v. *Valentino* (1989) 216 Cal.App.3d 1287, 1298 [265 Cal.Rptr. 96] (on-duty police officers).

■ Appellant, relying on the nonexclusive language of *Cox* and its progeny, asserts that class membership is not a requirement for protection under the Act. He first cites *Cox* and *Orloff* v. *Los Angeles Turf Club* (1951) 36 Cal.2d 734 [227 P.2d 449]) in support of his proposition that the Act protects "persons or classes of persons." In *Orloff* a racetrack excluded the plaintiff because he was of an "immoral character," and the court found that this exclusion did violate the Act. However, contrary to appellant's argument, *Orloff* actually held that an exclusion based on a customer's *conduct*, whether or not the customer was a member of a class, was reasonable as a matter of law. (*Id.* at pp. 740-741.) Appellant's reliance on *Cox* is likewise misplaced. *Cox* itself involved discrimination based on membership of a class of persons with an unconventional personal appearance. (*In re Cox, supra*, 3 Cal.3d at pp. 217-218.) See also *Marina Point, Ltd.* v. *Wolfson, supra*, 30 Cal.3d at page 744, where the court stated, "under the Unruh Act we have condemned *any* arbitrary discrimination against any *class*." (Second italics added.)

Appellant relies heavily on *Vaughn* v. *Hugo Neu Proler International* (1990) 223 Cal.App.3d 1612 [273 Cal.Rptr. 426] (*Vaughn*) which held that membership in a class which is the basis of discrimination is not a require‐ment under the Act. (*Id.* at p. 1617.) *Vaughn* involved a woman who alleged that she had been excluded from a sheet metal scrap yard because she had previously filed a suit against the scrap yard for gender-based discrimination. In *Vaughn*, just as in this case, defendants urged the court to construe the Act and the language in *Cox* and *Marina Point* narrowly, as requiring

membership in a protected class. In response, the *Vaughn* court stated: "Such a construction would be inconsistent with the express language of the statute which does not limit the application of the statute to identifiable members of a particular class but includes 'all persons.' " (*Ibid.*) While we agree that some language in those earlier Supreme Court cases can be interpreted to support the holding in *Vaughn*, we do not find they compel it (*In re Cox, supra,* 3 Cal.3d 205 and *Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d 721).

The *Vaughn* court emphasized language from *Marina Point* to the effect that the " 'rights afforded by the Unruh Act similarly are enjoyed by all persons, as individuals.' " (*Vaughn, supra,* 223 Cal.App.3d at p. 1617, quoting *Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d at p. 738.) However, the *Marina Point* court went further to clarify that statement: "the Unruh Act does not permit a business enterprise to exclude an *entire class* of individuals on the basis of a generalized prediction that the class 'as a whole' is more likely to commit misconduct than some other class of the public." (30 Cal.3d at p. 739, italics in original.) Thus, the language of *Marina Point* is properly read as stating that an individual, as a member of a class, is protected under the Act. *Marina Point* nowhere states that a person who is not a member of any class protected under the Act, is nonetheless protected as an individual.

If *Vaughn, Marina Point,* and *Cox* were the only cases confronting this issue, it would be easier to accept appellant's position. However, shortly after *Vaughn* was filed, our Supreme Court decided *Harris, supra,* 52 Cal.3d 1142. *Harris* involved a group of low-income tenants who were excluded from renting an apartment because their income was less than three times the amount of the rent. The tenants argued that as a class of low-income tenants they had been the victims of "economic discrimination." *Harris* rejected their argument that, although they were not members of one of the classes expressly included in the statute, the expansive reading given the Act by earlier cases compelled further expansion of the act to cover this new class: "[P]laintiffs' argument in favor of an additional classification . . . would effectively discard the listed classifications as surplusage in violation of the mandate to attribute significance to 'every word and phrase' used by the Legislature. However, in view of our prior decisions and the Legislature's sometimes equivocal reactions to them, we will also consider other relevant factors in construing the Unruh Act . . . ." (*Id.* at p. 1159.) *Harris* then proceeded to consider other factors including prior case law, statutory language, the legitimate business interests of the defendants and the consequences that would flow from protection of the plaintiff under the circumstances. We focus on those same factors in concluding that membership in a protected class is a requirement for protection under the Act.

## (1) *Statutory Language*

The second sentence in section 51 provides: "This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or blindness or other physical disability." In *Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d at pages 733-735, the Supreme Court read this sentence as having an "obscure" and nonrestrictive meaning. But *Harris* reexamined that sentence and held it to be an expression of legislative intent that the protection available under the Act was limited to the classes enumerated: "the Act was not intended to create a right of access to rental housing notwithstanding a landlord's policy of selection based on financial criteria, so long as the policy is applicable alike to all persons regardless of race, color, sex, religion, etc." (*Harris, supra,* 52 Cal.3d at p. 1155.) We understand this to mean that a policy of exclusion does not violate the Act as long as it would apply equally to all persons, whether or not they are a member of one of the classes enumerated in the statute. Respondent's policy in this case is one which would apply "alike to persons of *every* sex, color, race, religion," etc. (§ 51, italics added.)

The court's analysis of the statutory language of the Act and the appropriate limitations of its coverage was aided by its reliance on the principle of *ejusdem generis.* ■ "[E]jusdem generis holds that ' "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." ' " (*Harris, supra,* 52 Cal.3d at p. 1160.) Thus, the court found that the specific classes enumerated in the statute each involved personal characteristics; therefore, coverage of the Act should be limited to discrimination which is based upon personal characteristics. (*Ibid.*)

More generally, the court in *Harris* concluded that the repeated enumeration of specific classes contained within the statute, when viewed in light of settled principles of statutory construction, "strongly suggests" a legislative intent that the protection of the Act is limited. (*Harris, supra,* 52 Cal.3d at p. 1161.) The court warned against further expansion of coverage under the Act: "[W]ere we writing on a clean slate, the repeated emphasis in the language of sections 51 and 52 on the specified classifications of race, sex, religion, etc. would represent a highly persuasive, if not dispositive, factor in our construction of the Act." (*Id.* at p. 1159.)

The court, however, refused to overrule its prior decisions (e.g., *In re Cox, Marina Point*). (*Harris, supra,* 52 Cal.3d at p. 1155.) Instead, it reconciled its

new, more narrow reading of coverage under the Act with the holdings of those cases. Although prior cases had held that certain nonenumerated classes were protected under the Act, the court found that each of those cases had involved discrimination based on the personal characteristics of the plaintiffs (including geographical origin, physical attributes, and personal beliefs). (*Id.* at p. 1160.)

### (2) *Legitimate Business Interests*

*Harris* also considered whether or not the defendant possessed a legitimate business interest in excluding plaintiffs, which might justify denial of access to a place of public accommodation: " 'A business establishment may, of course, promulgate reasonable deportment regulations that are rationally related to the services performed and the facilities provided.' " (*Harris, supra,* 52 Cal.3d at p. 1162, quoting *In re Cox, supra,* 3 Cal.3d at p. 217.)

Respondent argues that appellant's exclusion from the bar was based on his conduct. In his first amended complaint, appellant acknowledges that the parties had known each other and had had dealings for many years before the first or second discrimination suits were filed. Additionally, appellant asserted that respondent, a "gay bar," excluded him because he is gay. Despite the fact that appellant has abandoned this allegation on appeal, we cannot fail to recognize its obvious absurdity and the tensions raised between the parties by such an allegation.

Respondent argues that it refused to serve and then excluded appellant because of appellant's prior conduct and his presence in the bar just a few days before the parties were to face each other in court. Thus, although this case is one which deals with retaliation, it is factually different than *Vaughn.* In *Vaughn* the previous discrimination suit between the parties had been settled several years before the alleged retaliatory exclusion took place. (*Vaughn* v. *Hugo Neu Proler International, supra,* 223 Cal.App.3d at p. 1616.) The defendant in *Vaughn* could hardly argue that plaintiff was excluded because tensions between the parties were running high as the result of the pending lawsuit.

Respondent also points out that it did not immediately exclude appellant, but did so only after appellant was involved in a battery incident with another customer. Based upon appellant's prior and present conduct and dealings with respondent and the circumstances existing between the parties at the time of the exclusion, we cannot say as a matter of law that appellant's exclusion was not "rationally related to the services performed and the facilities provided." (*Harris, supra,* 52 Cal.3d at p. 1162.)

## (3) Consequences of Inclusion

The final consideration made by the court in *Harris* was the consequences of allowing the type of claim alleged by the plaintiffs: "When uncertainty arises in a question of statutory interpretation, consideration must be given to the consequences that will flow from a particular interpretation." (*Harris, supra,* 52 Cal.3d at p. 1165.) Appellant asserts that if we do not find that the Act protects against retaliatory discrimination, "the Act would in effect be nullified." By way of example, appellant argues that a proprietor could exclude all women who had previously brought an action under the Act against it without fear of a subsequent lawsuit based on retaliatory exclusion.

First, appellant concedes that these women could still bring a subsequent suit for discrimination based on gender. In addition to the compensatory damages allowed under section 52, the victims of such discrimination could bring an action for an injunction enjoining further exclusion based on gender. ■ " ' "[A]lthough the Unruh Act makes no express provision for injunctive relief, that remedy as well as damages may be available to an aggrieved person." ' " (*Rotary Club of Duarte v. Board of Directors* (1986) 178 Cal.App.3d 1035, 1062 [224 Cal.Rptr. 213], affd. in *Bd. of Dirs. of Rotary Int'l v. Rotary Club* (1987) 481 U.S. 537 [95 L.Ed.2d 474, 107 S.Ct. 1940], quoting *Burks v. Poppy Construction Co.* (1962) 57 Cal.2d 463, 470 [20 Cal.Rptr. 609, 370 P.2d 313].)

■ Appellant's argument is not completely without merit. The Act might indeed offer better protection for victims of class-based discrimination if an action for retaliatory discrimination were added to the list of remedies currently available under the Act. However, the Act as it currently stands, offering no such remedy, has existed since 1959, and the predecessor to the Act was enacted nearly 100 years ago.[5] Prior to September 1990 when the Second District decided *Vaughn, supra,* 223 Cal.App.3d 1612, California had in place a statutory scheme which successfully protected the public from arbitrary discrimination without the need for a cause of action for retaliatory discrimination. The Legislature has not specifically included such protection under the Act; and, just as in *Harris,* the respondents alleged retaliatory discrimination does "not make distinctions among persons based on the

[5]The predecessor to the Act was enacted in 1897 and provided in part: "[A]ll citizens within the jurisdiction of this State shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of inns, restaurants, hotels, eating-houses, barber-shops, bath-houses, theaters, skating-rinks, and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens." (Stats. 1897, ch. 108, § 1, p. 137; see Klein, *The California Equal Rights Statutes in Practice* (1958) 10 Stan.L.Rev. 253.)

classifications listed in the Act (e.g., race, sex, religion, etc.) or similar personal traits, beliefs, or characteristics that bear no relationship to the responsibilities of consumers of public accommodations." (*Harris, supra,* 52 Cal.3d at p. 1169.)

Appellant also argues that his conduct in bringing the first action gives rise to his status as a member of a class of civil rights litigants. However, filing a lawsuit is clearly conduct which may be engaged in by persons of any sex, color, race, religion, ancestry, natural origin, or blindness or other physical disability. Nevertheless, appellant urges that such conduct creates a class of persons who have filed lawsuits. But such logic could be applied to any kind of conduct. Were we to hold that the conduct involved here gave rise to a protected class under the Act, we would open the door for a seemingly endless stream of new cases never contemplated by the Legislature. Given such lack of legislative direction, this court is reluctant to add a new class of "civil rights litigants" within the protection of the Act.

## IV. CONCLUSION

Appellant has asked us to expand coverage of the Act to retaliatory discrimination. We refrain from amending the Act to so expand coverage thereunder, whether that expansion is based on individualized discrimination, a never before protected class of litigants, or on asserted needs of the statutory scheme.

The plaintiffs in *Harris* did not fall into any listed class nor were they discriminated against on the basis of some personal characteristic. Therefore they were not eligible for statutory protection. (*Harris, supra,* 52 Cal.3d at p. 1160.) In light of our Supreme Court's adoption of a new, more narrow construction of the Act and its refusal to add a new class of protected persons described by economic status, this court is precluded from accepting appellant's invitation to extend the Act to cover discrimination which is neither based on status as a member of a class nor on personal characteristics but is, instead, based on the conduct of an individual. (See *Frantz* v. *Blackwell* (1987) 189 Cal.App.3d 91, 96 [234 Cal.Rptr. 178] ["The Unruh Act seeks to remedy arbitrary discrimination. It does not seek to remedy traditional wrongs arising out of tort or breach of contract, nor does it seek to remedy discrimination based on purely personal grounds."].)

Appellant has thus failed to state a cause of action under the Act in either his first cause (punitive damages) or his fourth cause (injunctive relief and compensatory damages). The sustaining of respondent's demurrer without leave to amend was not an abuse of discretion.

The judgment is affirmed.

Perley, J., concurred.

**POCHÉ, J.,** Dissenting.—I cannot join any of the majority opinion's efforts to affirm: (1) by attempting to distinguish away the only relevant case authority which is not distinguishable except by name, (2) by ignoring the legal test for review of a judgment of dismissal predicated upon the sustaining of a general demurrer, and (3) in misreading binding California Supreme Court authority. For these reasons I dissent.

The single legal question before us is: does a plaintiff who has previously brought a claim under the Unruh Civil Rights Act (the Act) state a cause of action under the Act for subsequent discrimination undertaken in retaliation for the prior claim? Until now the answer has been yes.

In *Vaughn v. Hugo Neu Proler International* (1990) 223 Cal.App.3d 1612 [273 Cal.Rptr. 426], a female scrap metal dealer brought a gender discrimination claim under the Act against a scrap metal processing and distributing business which refused her and other women, but allowed men, entry onto its premises in order to collect discarded scrap. (*Id.* at pp. 1615-1616.) Her claim was resolved in 1986, but by 1989 the business was once again refusing to admit her or her employees, and even sought her arrest for trespassing. (*Ibid.*) She sued a second time under the Act alleging that Neu Proler's conduct was retaliation for her earlier suit. (*Id.* at p. 1616.)

On appeal after the trial court sustained a general demurrer, the Second District reversed concluding that she had stated a cause of action under the Act. Despite the fact that the Act does not expressly create a cause of action for retaliation, such claims must be permitted in order to render the protections of the Act real. As Justice Turner said, speaking for a unanimous court, because "[t]he public has a strong interest in preventing business establishments from engaging in discriminatory practices for arbitrary reasons," there is a public interest in protecting a person who has brought suit under the Act "from retaliatory conduct by the offending party." (*Vaughn v. Hugo Neu Proler International, supra,* 223 Cal.App.3d at p. 1620.)

The holding in *Vaughn* controls this case. Mr. Gayer has alleged a prior suit brought under the Act and subsequent refusal to serve him in retaliation for his prior claim. We are ruling upon a demurrer. Accordingly, we look only to the face of the pleading and must assume the truth of the facts therein. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

It is completely irrelevant to our inquiry whether, as Polk Gulch argues, Mr. Gayer's prior claim was still pending when he was denied service, or whether he was told to leave the bar only after contretemps with another customer. Why Mr. Gayer was denied service is a question for a fact finder. Should Polk Gulch be able to prove that it denied service to Mr. Gayer not because of the prior lawsuit but for some other reason, Polk Gulch would be entitled to prevail.

This is not to say that such claims may never be resolved on demurrer. Indeed, our Supreme Court has recently affirmed the use of a demurrer or summary judgment "when the policy or practice of a business establishment is valid on its face because it bears a reasonable relation to commercial objectives appropriate to an enterprise serving the public." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165 [278 Cal.Rptr. 614, 805 P.2d 873].) This is not such a case. As an initial matter there is no allegation that Polk Gulch pursued a policy or practice of excluding everyone who brought suit against it or even everyone who sued it for Unruh Civil Rights Act violations. Even if it had such a policy, however, the very public policy rationale for allowing a retaliation cause of action would preclude finding such a policy to be facially valid.

Finally the majority opinion misreads *Harris* to conclude that only members of a protected class may bring an action, even one for retaliation, under the Act. (Maj. opn., *ante*, at p. 522.) *Harris* expressly rejected the notion that the classes listed in the Act are an exhaustive list. (*Harris* v. *Capital Growth Investors XIV*, *supra*, 52 Cal.3d at pp. 1155-1159.)

*Harris* simply held that the characteristics which define a protected class under the Act are "personal"; that is, they are in some way like the distinctions specifically enumerated of sex, race, color, religion, ancestry, national origin, blindness, or physical disability. (*Harris* v. *Capital Growth Investors XIV*, *supra*, 52 Cal.3d at p. 1161.) It concluded that poverty or low income level is not a distinguishing trait which the Act protects, at least when there is a nexus between the financial criterion imposed and the legitimate business interest of the business entity. (*Id.* at pp. 1160-1162, 1169.) Thus, it found unobjectionable the landlord's minimum income policy because "[t]he policy does not make distinctions among persons based on the classifications listed in the Act . . . or *similar personal traits, beliefs, or characteristics that bear no relationship to the responsibilities of consumers of public accommodations*. It is a financial criterion of customer selection that applies uniformly and neutrally to all persons regardless of personal characteristics." (*Id.* at p. 1169, italics added.)

Polk Gulch is not making distinctions among persons to whom it denies service based upon the characteristics listed in the Act, but to use the language of the Chief Justice it is drawing lines based upon "similar personal traits, beliefs, or characteristics that bear no relationship to the responsibilities of consumers of public accommodations." The personal characteristic Mr. Gayer possesses is that he has previously sued Polk Gulch for violating the Act. I fail to comprehend how that characteristic relates in any fashion to his "responsibilities as a consumer of public accommodations."

The majority opinion apparently reasons thus—Mr. Gayer is in the class of individuals who have sued Polk Gulch. Such a class is not protected either explicitly by the statute nor the case law ergo he cannot state a claim under the Act. Indeed, the opinion reasons that the Polk Gulch "policy" (the existence of which it infers) is harmless because it applies neutrally to every individual regardless of sex, color, race, religion, etc., who has sued Polk Gulch. (Maj. opn., *ante*, at p. 522.)

The reasoning of the majority opinion has the following consequence. Polk Gulch may not discriminate against women, homosexuals, Blacks, or Presbyterians. If it does a member of those protected classes may bring an action under the Act. Should such a victim of discrimination then return to Polk Gulch and be refused service, however, the victim is out of luck. Discrimination which flows from a policy of retaliation is okay. Now the victim is no longer a member of a protected class, but is merely a member of a class of previously injured individuals who have sought to defend their statutory rights. In short, the majority opinion builds into the Act a disincentive against enforcement by those whose rights the Act professes to protect.

I submit it makes very little difference to victims of discrimination whether they are denied service or business dealings as a consequence of their sex or religion or as a consequence of a facially neutral policy not to do business with individuals who defend their civil rights. Were Martin Luther King, Jr., alive today and were he to be refused service because of his race on Monday at the lunch counter of a California restaurant he could bring a claim under the Act. However under the majority opinion's reading, when on Wednesday, he returned to the lunch counter only to be told he would not be served, not because of his race, but in retaliation for his Act claim, he would have no recourse under the Act for that refusal to serve. I can believe neither that this is nor that it should be the law of this state.

I would reverse the judgment of dismissal as to plaintiff's first and fourth causes of action, holding that Mr. Gayer has stated a cause of action under Civil Code sections 51 and 52.

Appellant's petition for review by the Supreme Court was denied September 26, 1991.