Filed 4/12/16  MacRitchie v. Wells Fargo Bank CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| ANDREW D. MACRITCHIE et al., | C071645 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0028732) |
| v. | |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants and Respondents. | |

Plaintiffs Andrew D. and Cynthia L. MacRitchie appeal from a judgment dismissing their first amended complaint after the trial court sustained a demurrer by defendants Wells Fargo Bank, N.A., (Wells Fargo), and Federal Home Loan Mortgage Corporation (FHLMC).  Plaintiffs brought suit after the foreclosure sale of their home, alleging causes of action for breach of contract, breach of security instrument, declaratory relief, negligent misrepresentation, and quiet title.  Wells Fargo was the loan servicer, and FHLMC was the purchaser at the foreclosure sale.  A third defendant, Cal-Western

1

Reconveyance Corporation (Cal-Western) was the trustee under the deed of trust. Cal-Western had filed a petition in bankruptcy, and the appeal is stayed as to it.

Plaintiffs have alleged a number of sharp practices against Wells Fargo and FHLMC in the handling of their loan default and attempts to modify the loan. We must assume the truth of these allegations. Unfortunately, since it appears plaintiffs' home was worth significantly less than the loan for which the property was security, they are unable to allege that the foreclosure sale resulted in damages to them.

The trial court sustained the demurrer. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2003 plaintiff Cynthia MacRitchie purchased a home in Auburn, California. In 2006, after she and Andrew MacRitchie married, the couple obtained a $308,250 adjustable rate loan from MortgageIT, Inc. (MortgageIT), secured by a deed of trust recorded against the Auburn property. Pursuant to the deed of trust, Mortgage Electronic Registration Systems, Inc. (MERS) acted as the nominee for the lender, MortgageIT, and was the beneficiary of the deed of trust. First American Title was the trustee of the deed of trust. At some point, Wells Fargo became the beneficiary of the trust deed.[1]

The first amended complaint alleged that plaintiffs contacted defendant Wells Fargo Bank, their loan servicer, in October 2008 about refinancing their mortgage. They were current on their mortgage payments at that time. Wells Fargo informed them that because of the decrease in their home's value, refinancing was impossible. Wells Fargo informed plaintiffs that it would consider them for a loan modification only if their

---

[1] Exhibit I to the first amended complaint is an assignment of trust in which Wells Fargo granted its beneficial interest to FHLMC. The document assigning the note and deed of trust to Wells Fargo was not attached to the first amended complaint, but was attached to the initial complaint. In that recorded assignment, MERS assigned the deed of trust to Wells Fargo. Exhibits attached to a superseded complaint are properly considered on demurrer. (*Frantz v. Blackwell* (1987) 189 Cal.App.3d 91, 94.)

mortgage payments were at least three months late, at which time it would send them a modification application. In November 2008, plaintiffs stopped making payments.

By January 12, 2009, Cal-Western, the substitute trustee, recorded a notice of default indicating the arrearage was $11,432.57.[2] On March 2, 2009, Wells Fargo sent plaintiffs a letter stating that they were being considered for a loan modification, and that if they qualified, Wells Fargo would suspend the foreclosure activity for 30 days.[3] Also if they qualified, Wells Fargo would create a new payment plan, and after plaintiffs made three payments in the new amount, Wells Fargo would finalize the loan modification.

On April 14, 2009, plaintiffs received a notice of trustee's sale. The notice indicated the sale would take place on May 4, 2009. Upon receipt of the notice, plaintiffs called Wells Fargo, whose agent stated the sale would be "pushed back" until Wells Fargo had time to review plaintiffs' case and make a determination regarding modification. Plaintiffs repeatedly submitted documents requested by Wells Fargo.

Finally, in September 2009, Wells Fargo sent plaintiffs a letter enclosing a "Trial Period Plan" (TPP). It stated: "If you qualify under the program requirements and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure." The letter went on to explain that plaintiffs would be required to explain their financial hardship, submit income documentation, and make timely monthly payments during the trial period. Three payments were required in the TPP, due October 1, 2009, November 1, 2009, and December 1, 2009. The TPP provided that there was "no 'grace period' allowance in [the] Agreement." All installments were

_____

[2]  The trial court's order sustaining demurrer stated that exhibit E to plaintiffs' original complaint, neither of which is in the record before us, was a recorded substitution of trustee in which MERS, the original beneficiary, substituted Cal-Western as trustee in place of First American Title.

[3]  The letter was actually sent under the letterhead of America's Servicing Company, an internal division of Wells Fargo. We will refer to both entities as Wells Fargo.

required to be "received on or before the due date and made strictly in accordance with" the terms of the agreement.

Plaintiffs alleged they immediately sent the requested documentation, sent their first payment under the TPP on September 30, 2009, their second payment on November 4, 2009, and their third payment on December 2, 2009. When on January 11, 2010, plaintiffs had yet to receive a modification of their loan, they telephoned Wells Fargo to inquire about the modification. They were told Wells Fargo would send the documents for the modification around the middle of February 2010, and that they should continue to make payments until they received word the loan modification had been approved. Plaintiffs made a payment of $2,160.61 on January 11, 2010, and another payment of $2,160.61 on February 12, 2010.

On February 15, 2010, Wells Fargo assigned the note and deed of trust to FHLMC. The assignment was recorded on March 30, 2010.

On March 5, 2010, plaintiffs learned from a potential bidder that a trustee's sale would be taking place that morning. Plaintiffs were on the telephone with Wells Fargo from 9:30 to 10:15 a.m. that morning. The Wells Fargo representative told plaintiffs their house was not up for sale, then put plaintiffs on hold. When the representative came back on the line, he again told them no sale was taking place, and asked them to fax updated financial information. Plaintiffs then called the "Trustee Sales Line" and were informed the sale did not go through.

While plaintiffs were on the telephone with Wells Fargo, their home was sold to defendant FHLMC. FHLMC purchased the property for $155,323.80. Plaintiffs represent that FHLMC filed an unlawful detainer case against them, pursuant to which they lost possession of the property in April 2012.

4

Plaintiffs filed suit against Wells Fargo, FHLMC, and Cal-Western. Cal-Western has since filed a petition in bankruptcy, and this case is stayed as to Cal-Western.[4] The first amended complaint, the complaint at issue here, alleged causes of action for breach of contract and negligent misrepresentation against Wells Fargo, breach of security instrument, declaratory relief, and quiet title. Defendants demurred to the complaint, and the trial court sustained the demurrer without leave to amend.

The trial court found that plaintiffs' first cause of action for breach of contract failed to state a cause of action. The trial court relied on language in the terms and conditions of the TPP stating that the lender was under no obligation to enter into any further agreement and the statement that the lender could terminate the TPP without notice to the borrower, and institute foreclosure proceedings according to the terms of the note and deed of trust. The trial court concluded that since nothing in the TPP required Wells Fargo to modify plaintiffs' loan, there was no legally valid contract.

Plaintiffs' second cause of action for breach of security instrument alleged that MortgageIT never recorded a substitution of trustee or assigned its interest in the note and deed of trust. Thus, when Cal-Western recorded the notice of default, when it recorded the notice of trustee's sale, and when it sold the property, it acted without authority because it was not the trustee of record. The trial court took judicial notice of an exhibit to plaintiffs' superseded complaint, which was a recorded substitution of trustee naming Cal-Western as the trustee. The exhibit had been omitted from the first amended complaint. The document had been recorded prior to the notice of trustee's sale. The trial court further found that plaintiffs could not assert a cause of action claiming irregularity in the foreclosure process without alleging tender, and plaintiffs had not alleged tender.

---

[4] Cal-Western's counsel in this action has advised the court that its understanding is that the bankruptcy stay is still in effect. Cal-Western has not filed a respondent's brief.

The trial court found that the third cause of action for declaratory relief was based on the other claims, and that it failed because they failed. The fourth cause of action was for negligent misrepresentation. The trial court found that because negligent misrepresentation is a species of fraud, the cause of action must be pleaded with particularity. The allegation was that Wells Fargo represented that if plaintiffs complied with the terms of the TPP, they would be offered a permanent modification. The trial court found that this allegation directly contradicted the language of the TPP, and that the alleged misrepresentation was as to future events, thus not actionable fraud. The trial court denied leave to amend.

The trial court found the fifth cause of action for quiet title failed because plaintiffs did not allege that they tendered full payment of their debt.

DISCUSSION

I

Standard of Review

Our review is de novo, and we assume the truth of all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490.) We also consider matters shown in exhibits attached to the complaint and incorporated by reference, as well as matters that cannot reasonably be controverted and that were judicially noticed. (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 665; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919.) To the extent the factual allegations in the complaint conflict with the complaint's exhibits, we rely on the contents of the exhibits. (*Performance Plastering,* at p. 665.)

## II
## Damages

Although we discuss the causes of action separately, the overarching problem with plaintiffs' causes of action for breach of contract, breach of security instrument, and negligent misrepresentation is that plaintiffs cannot allege damages.

A cause of action for breach of contract requires the plaintiff plead: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. (*Careau & Co. v. Security Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1388 (*Careau & Co.*).) Plaintiffs' cause of action for breach of a security instrument is also a breach of contract action. Likewise, a cause of action for negligent misrepresentation requires a plaintiff to plead damages. (*Cadlo v. Owens-Illinois, Inc*. (2004) 125 Cal.App.4th 513, 519.) Because negligent misrepresentation is a species of fraud, and damages are an element of the cause of action, damages must be factually and specifically alleged. (*Ibid*.)

Plaintiffs' causes of action for breach of contract and breach of the security agreement allege merely that plaintiffs "have been damaged in an amount to be proven at time of trial." Plaintiffs' cause of action for negligent misrepresentation alleged "actual and consequential damages all in amounts subject to proof at trial." Plaintiffs also alleged they were entitled to punitive and exemplary damages.

Under the circumstances presented, plaintiffs lost the property, but gained the extinguishment of a $308,250 debt. Plaintiffs had no equity in the property. The property was not worth the amount of the debt, a fact we may infer from plaintiffs' allegation that they could not refinance the $308,250 loan due to the home's decrease in value and from the significantly lower sales price at the foreclosure sale.

Nor did plaintiffs lose anything by making payments under the TPP. Plaintiffs alleged they stopped making payments on their mortgage in November 2008. They began making payments under the TPP in October 2009. Thus, when they began making

7

payments under the TPP, the mortgage was 11 months in arrears. Plaintiffs made only five payments under the TPP in the total amount of $10,803.05. The notice of default stated that as of January 7, 2009, some eight months *before* they began making payments under the TPP and less than three months into the 11-month period of nonpayment, they were in arrears on the loan in the amount of $11,432.57, an amount which consisted of past due payments, costs, and expenses.

Plaintiffs have not alleged that defendants' actions prevented them from seeking other financing, or prevented them from purchasing another property. (See *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 928.) Plaintiffs argue they have suffered injury because every parcel of real property is considered unique under California law. The long-established maxim that every real property is unique addresses the nature of the remedy where a plaintiff suffers damages because a contract for the sale of property has been breached. In such case, the plaintiff may seek specific performance because money damages are inadequate. (*Glynn v. Marquette* (1984) 152 Cal.App.3d 277, 280.) The rule is inapplicable here because we are not dealing with a contract for the sale of property, and plaintiffs have not suffered any damage, since the home was taken in satisfaction of their debt.

Plaintiffs have alleged that had they known of the foreclosure sale "they could have cured the default." However, their right to "cure the default" by paying the amount of the default and reinstating the loan, expired five business days prior to the sale date. (Civ. Code, § 2924c, subds. (a)(1), (e).) Plaintiffs do not allege that they could have redeemed the property prior to sale by tendering the entire amount owing, together with interest, costs, and fees. Plus, the plaintiffs would have to have alleged some lost equity in the property to have suffered damages as a result of the foreclosure, something the facts indicate they cannot do.

Plaintiffs have also asserted "punitive and exemplary damages in an amount sufficient to punish Wells Fargo for its conduct towards Plaintiffs." There must be a

8

recovery of actual damages to support an award of exemplary damages, and exemplary damages are not available for a breach of contract.  (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 530; Civ. Code, § 3294, subd. (a).)

### III
### Breach of Contract

#### A.  No Agreement to Modify Loan

Plaintiffs' breach of contract cause of action alleged that Wells Fargo agreed to send them a final modification agreement if they made three forbearance payments under the TPP.  In fact, the TPP provided that Wells Fargo would modify the mortgage *if* plaintiffs qualified *and* complied with the terms of the TPP.  The TPP made clear that plaintiffs would be sent a loan modification agreement only if they were approved for a loan modification.  The TPP also provided that Wells Fargo could, in its sole discretion and without further notice, terminate the TPP and institute foreclosure proceedings. Plaintiffs alleged they complied with the terms of the TPP, but did not allege that Wells Fargo approved them for a loan modification or that they qualified for a loan modification.

The TPP made clear that approval for a loan modification was a condition to defendants' obligation to modify the loan.  Plaintiffs were required to specifically plead the happening of the condition. (*Careau & Co., supra*, 222 Cal.App.3d at p. 1389.)  In *Careau & Co.* one of the conditions precedent to the defendant lender's obligation to loan money to the plaintiff borrowers was the approval of the lender's senior credit committee. (*Id.* at p. 1383, fn. 7.)  The plaintiffs alleged that an employee of the lender informed them they had been approved by the credit committee, but not that they had in fact been approved by the committee. (*Id.* at pp. 1383, 1390-1391.)  Although the complaint made conclusory allegations that conditions had been satisfied, such general allegations were not adequate.  "[W]here the condition is an event, as distinguished from an act to be

9

performed by the plaintiff, a specific allegation of the happening of the condition is a necessary part of pleading the defendant's breach." (*Id*. at p. 1389.)

Plaintiffs did not plead that they were approved for a loan modification, thus did not adequately allege breach of an agreement to enter into a loan modification.

Plaintiffs argue defendants' breach was not in failing to modify the loan, but in foreclosing on the property without evaluating them for a modification and without notice. However, plaintiffs did not allege that defendants' breach lay in failing to consider them for modification. Rather, the complaint alleged the breach was defendants' action of not sending a modification agreement and foreclosing on the property. The TPP terms directly contradict any unqualified agreement not to foreclose on the property. The TPP indicated only that Wells Fargo would extend forbearance for "a period of time." Wells Fargo did not agree to forego foreclosure for a certain length of time, nor did it agree to further notify plaintiffs of a sale of the property. Instead, the TPP provided Wells Fargo could terminate the agreement in its sole discretion without further notice, and institute foreclosure proceedings according to the terms of the note and deed of trust.

Plaintiffs argue it was reasonable for them to rely on the letter Wells Fargo sent with the TPP which stated: "If you do not qualify for a loan modification, we will work with you to explore other options available to help you keep your home or ease your transition to a new home." To the extent they argue this was an agreement to give them notice before foreclosing on the property, this is not what the statement purports to say. In fact, plaintiffs alleged FHLMC did attempt to work with them to keep them in the home when FHLMC offered to lease the home to them. Furthermore, any reliance on this statement was not reasonable in light of the written term of the TPP stating the lender could terminate the TPP without notice and institute foreclosure proceedings.

10

Plaintiffs also state, without explanation, that Wells Fargo violated former Civil Code section 2923.6.[5] However, there is no private cause of action under section 2923.6. (*Quinteros v. Aurora Loan Servs.* (E.D. Cal. 2010) 740 F.Supp.2d 1163, 1174.) Moreover, former Civil Code section 2923.6 did not require lenders to implement modifications, thus Wells Fargo had no duty to agree to a loan modification. (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1056.)

B. Notice

The deed of trust provided that the trustee, "shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale . . . ." The deed of trust also provided that the trustee "may postpone sale of all or any parcel of the Property by public announcement at the time and place of any

---

[5] As of the date of the sale, former Civil Code section 2923.6 provided in pertinent part:

"(a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

"(1) The loan is in payment default, or payment default is reasonably foreseeable.

"(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

"(b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."

previously scheduled sale." The deed of trust provided the borrower could reinstate the note up to five days before the sale of the property by paying the lender all sums due.

Pursuant to the deed of trust and the applicable law, notice was given to plaintiffs, on April 14, 2009, of a sale to occur on May 4, 2009. A Wells Fargo representative told plaintiffs the sale would be postponed until Wells Fargo had a chance to review their modification application. The trustee's sale was in fact postponed, and occurred on March 5, 2010.

To the extent plaintiffs now argue that the contract breach consisted of defendants' sale of the property on March 5, 2010, without notice to them, such notice was not required under the TPP, the trust deed, or the applicable law. "[W]here deeds of trust provide that the trustee may from time to time postpone a sale by proclamation made at the time of postponement, no further notice need be given by posting or publication." (*First Nat'l. Bank v. Coast Consol. Oil Co.* (1948) 84 Cal.App.2d 250, 256.) A lender is under no obligation to inform borrowers of the postponed date or dates of the trustee's sale. (*Melendrez v. D & I Investment, Inc*. (2005) 127 Cal.App.4th 1238, 1261, fn. 30.) A debtor bears the responsibility of remaining informed about the status of property that had been put into foreclosure, and if the trustee follows the procedure for oral postponements, no further notice is required. (*Tully v. World Savings & Loan Assn*. (1997) 56 Cal.App.4th 654, 664.)

Plaintiffs argue defendants failed to comply with statutory notice provisions with respect to the sale of the property. To the extent they refer to notice of the *continued* sale date after notice was properly given of the initial sale date, we explained above that at the time of the sale in this case, the applicable law did not require such notice. If plaintiffs mean to argue that defendants failed to give statutory notice of the *original* sale date, that was not alleged in the complaint. In fact, plaintiffs alleged receipt of a notice of trustee's sale, and attached a duly recorded notice to the complaint.

12

C.  Promissory Estoppel

Plaintiffs expend one sentence arguing they should have been granted leave to amend to plead promissory estoppel:  "MacRitchies's counsel argued at the January 17, 2012, hearing on demurrer that MacRitchies have also sufficiently plead [*sic*] the elements for promissory estoppel and requested the court to grant leave to amend the [first amended complaint] to include this cause of action."  We treat this point as waived because it is unsupported with reasoned argument and citations to authority.  (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546.)  In any event, plaintiffs were required to show how they would amend the complaint and how the amendment would change the legal effect of the pleading.  (*Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460.)  They have not done this.

D.  Good Faith and Fair Dealing

Plaintiffs did not allege a cause of action for breach of the covenant of good faith and fair dealing.  Nevertheless, they now argue that defendants breached their duty of good faith and fair dealing when they sold plaintiffs' home without notice.  As the argument is part of their breach of contract argument, they apparently claim the breach of the implied covenant of good faith and fair dealing resulted in a breach of contract.

"It has long been recognized, of course, that every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  (*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (2002) 100 Cal.App.4th 44, 55.)  Plaintiffs argue that where a contract gives one party a discretionary power affecting the rights of the other party, there is a duty to exercise the discretion in good faith.  (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372.)

The TPP provided that plaintiffs' eligibility for a loan modification depended on their qualification "under the program requirements" "based on investor guidelines."

13

Assuming that the program requirements and investor guidelines resulted in a discretionary power that compelled Wells Fargo to exercise such discretion in good faith, plaintiffs have asserted no allegation that Wells Fargo did not exercise good faith in determining whether they qualified for a loan modification. In fact, there is no allegation that Wells Fargo ever informed them they did not qualify. Moreover, the implied covenant of good faith and fair dealing did not prohibit Wells Fargo from doing that which was expressly permitted by the agreement. (*Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 803.) The TPP expressly provided that Wells Fargo was "under no obligation to enter into any further agreement." The discretionary power of Wells Fargo under the contract was directed to its determination that plaintiffs qualified for a loan modification.

This case is unlike *Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1409-1410, which held that foreclosing and selling the house before the borrower had finished making the three required payments under the TPP injured the right of the borrower to receive the benefits of a TPP that *guaranteed* a modification of the mortgage as long as timely payments were made and financial hardship was verified. The sale of the house prevented the loan modification, thus the borrowers stated a cause of action for breach of the covenant of good faith and fair dealing. By contrast, the MacRitchies' TPP did not guarantee a loan modification would be granted, and the TPP had been fully performed at the time of the foreclosure.

Plaintiffs argue the breach of good faith and fair dealing consisted of the sale of the home without notice. However, the TPP expressly provided that Wells Fargo could, "without further notice to you, . . . terminate this Agreement." If the TPP was terminated, the terms of the agreement provided that Wells Fargo could "institute foreclosure proceedings according to the terms of the Note and Security Instrument." Clearly, Wells Fargo was entitled to terminate the TPP without notice and to foreclose on the property.

14

The trial court did not err in sustaining defendants' demurrer to the breach of contract cause of action.**6**

IV
Home Affordable Mortgage Program

In support of their complaint, plaintiffs cite to a Seventh Circuit opinion, *Wigod v. Wells Fargo Bank, N.A.* (2012) 673 F.3d 547 (*Wigod*), and to California cases that have followed its holding. *Wigod* held that where a borrower applied to the lender for a Home Affordable Modification Program (HAMP) modification pursuant to which the parties entered into a TPP, the borrower could recover for breach of contract and promissory estoppel under Illinois law when the lender refused to agree to a permanent loan modification.**7**

In *Wigod* the heart of the borrower's complaint was a claim that Wells Fargo breached its agreement to modify her loan pursuant to HAMP. (*Wigod, supra*, 673 F.3d at p. 560.) Wells Fargo claimed the TPP contained no valid offer to modify the mortgage, and lacked clear and definite terms. (*Id.* at p. 561.) Unlike this case, Wigod's TPP promised her that she would be offered a permanent loan modification if she complied with the terms of the TPP by making payments and disclosures, and if her

---

**6** The basis of defendants' argument against the breach of contract and negligent misrepresentation causes of action was that plaintiffs breached the TPP by not making their payments on time. We need not consider this argument because we have resolved the issues in defendants' favor on other grounds.

**7** HAMP is a program started by the federal government in early 2009, to provide relief during the foreclosure crisis. (*United States v. Godfrey* (1st Cir. 2015) 787 F.3d 72, 74.) It provided incentives for lenders to modify existing loans for borrowers who were eligible under the program. (*Ibid*; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 787.) The program guidelines provided that if the borrower met certain requirements and it was determined that it was more profitable to the loan servicer to modify the loan than to allow it to go into foreclosure, the servicer must offer a loan modification. (*West v. JPMorgan Chase Bank, N.A.,* at pp. 787-788.)

15

representations remained true and accurate. (*Id.* at p. 560.) The TPP provided: " 'I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan *if I qualify for the Offer* or will send me written notice that I do not qualify for the offer.' " (*Id.* at p. 562.) The court reasoned that when Wells Fargo sent Wigod a signed copy of the TPP, it determined she was qualified for a modification. (*Ibid.*) The court held that Wells Fargo's obligation to offer a permanent modification was not contingent on its determination during the trial period that the borrower qualified under HAMP guidelines, because the TPP was itself an offer for permanent modification. (*Ibid.*)

Following *Wigod*, *West v. JPMorgan Chase Bank, N.A., supra*, 214 Cal.App.4th 780, held that the borrower stated causes of action for, inter alia, breach of contract and negligent misrepresentation. In finding the TPP was a binding contract, the court stated: "When Chase Bank received public tax dollars under the Troubled Asset Relief Program, it agreed to offer TPP's and loan modifications under HAMP according to guidelines, procedures, instructions, and directives issued by the Department of the Treasury." (*Id.* at pp. 796-797, fn. omitted.) *West v. JPMorgan Chase Bank, N.A.,* held that even though the TPP did not expressly provide that the lender would offer a permanent loan modification, such a provision is imposed by the HAMP directives, and the HAMP guidelines inform the reasonable expectations of the parties. (*Id.* at p. 797.)

More recently in *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, the court held that the borrower had stated causes of action for, inter alia, breach of contract and negligent misrepresentation. (*Id.* at pp. 301-302.) There, the lender agreed to permanently modify the debtor's mortgage, then later denied the loan modification. (*Id.* at p. 302.) The borrower did not allege the loan modification was pursuant to HAMP, but there was an allegation that the lender refused to qualify the borrower under HAMP, thus the Court of Appeal ordered the borrower be allowed leave to amend the complaint in

16

light of the recent decisions under HAMP and the allegation in the complaint referring to HAMP. (*Id*. at pp. 305-306.)

Plaintiffs argue, without citation to authority, that "the HAMP Directives in place prohibited Wells Fargo and [FHLMC] from foreclosing or selling MacRitchies' home while MacRitchies were making Forbearance Payments and under consideration for a loan modification." They also point to a U.S. Treasury Department Supplemental Directive regarding the HAMP program, which stated that loan servicers are prohibited from initiating a foreclosure action while a borrower is in a trial period plan. They further point to a FHLMC bulletin regarding borrowers under consideration for a FHLMC foreclosure alternative which provided foreclosure sales could not be completed until the loan servicer had tried to contact the borrower and determined whether the borrower could participate in a loan modification or workout.

The problem is that plaintiffs have not alleged, and the documents attached to the complaint do not indicate, that the TPP with Wells Fargo was pursuant to a HAMP program, nor is there any indication the plan was a FHLMC program. There are no allegations the plaintiffs were eligible for a HAMP loan modification. Unless the payment plan was part of a federal loss mitigation program, Wells Fargo had no duty to comply with HAMP directives. (*Vu Nguyen v. Aurora Loan Services, LLC* (9th Cir. 2015) 614 Fed.Appx. 881.)

Plaintiffs also broadly reference California's public policy to provide consumer protection, and point specifically to Civil Code, section 2924.18, subdivision (a)(3), (prohibiting a foreclosure sale while the borrower is in compliance with a forbearance agreement) and its enforcement provision, section 2924.19, subdivision (b). However, those statutes were not enacted until 2012, and are not applicable to the events here, the latest of which occurred in 2010.

17

V
Breach of Security Agreement

The deed of trust on the property listed plaintiffs as the borrowers, MortgageIT as the lender, and MERS as the beneficiary, acting solely as a nominee for the lender and the lender's successors. The deed of trust also provided that the lender could appoint a successor trustee.

Quoting from a document that is not in the record and was not attached to the complaint, plaintiffs state that MERS purported to assign the note to Wells Fargo, but that MERS did not have the authority to assign the note, rendering the assignment void. This statement is belied by the deed of trust, which provided that MERS was a "nominee for Lender and Lender's successors and assigns." The note provided that the lender "may transfer this Note."

Plaintiffs also argue there was a break in the chain of title when the note was assigned to one party while the deed of trust named another party. Apparently, plaintiffs' argument is that this rendered the assignment invalid and the foreclosure sale void. Plaintiffs cite an 1873 case which stated that a "note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." (*Carpenter v. Longan* (1873) 83 U.S. 271, 274 [21 L.Ed. 313], fn. omitted.)

More recent authority has rejected the theory that a note and deed of trust are inseparable. *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440, held that the procedures governing nonjudicial foreclosures are set forth in Civil Code sections 2924 through 2924k, and they do not require that the note be in the possession of the party initiating foreclosure. The nonjudicial foreclosure statutory scheme is exhaustive and courts do no read any additional requirements into the statute. (*Debrunner,* at p. 441.) Accordingly, there is no requirement that the party commencing a nonjudicial foreclosure sale have a beneficial interest in both the note and the deed of

18

trust. (*Ibid*.) Likewise, *Jenkins v. JPMorgan Chase Bank, N.A*. (2013) 216 Cal.App.4th 497, 513, disapproved on another point in *Yvanova v. New Century Mortgage Corp., supra*, 62 Cal.4th 919, held that because the statutory provisions, "broadly authorize a 'trustee, mortgagee, or beneficiary, or *any of their authorized agents*' to initiate a nonjudicial foreclosure ([Civ. Code,] § 2924, subd. (a)(1), italics added), [they] do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale."

Under their cause of action labeled breach of security agreement, plaintiffs also alleged that Cal-Western executed and recorded the notice of default and notice of trustee's sale, and that their lender, MortgageIT, never recorded a substitution of trustee appointing Cal-Western in lieu of First American as trustee. They alleged Cal-Western therefore acted without authority, since First American was actually the trustee of record.

The trial court found that exhibit E to plaintiffs' original complaint was a recorded substitution of trustee, substituting Cal-Western as the trustee in place of First American, and that the substitution of trustee was signed and recorded prior to the notice of trustee's sale. The substitution of trustee was omitted from the first amended complaint.

Plaintiffs argue the trial court erred when it judicially noticed the facts stated in the substitution of trustee rather than merely the fact that the document had been recorded. The trial court took judicial notice of the recorded substitution of trustee. As noted earlier, exhibits attached to a superseded complaint are property considered on demurrer. (*Frantz v. Blackwell, supra*, 189 Cal.App.3d at p. 94.) The only fact in the recorded substitution of trustee that was relied on by the trial court was the fact that "MERS, the original beneficiary, substituted Cal-Western Reconveyance Corporation as trustee in place of First American Title." It was permissible for the trial court to take notice of this fact. "When a court is asked to take judicial notice of a document, the propriety of the court's action depends upon the nature of the facts of which the court takes notice from the document. . . . [F]or example, it was proper for the trial court to take judicial notice of

the dates, parties, and legally operative language of a series of recorded documents, but it would have been improper to take judicial notice of the truth of various factual representations made in the documents." (*Fontenot v. Wells Fargo Bank, N.A., supra*, 198 Cal.App.4th at p. 265.)

In this case, the trial court took notice only of the dates, parties, and legally operative language of the documents to find that Cal-Western as been substituted as the trustee in place of First American Title.

Plaintiffs also argue that the trial court should not have taken judicial notice of the facts stated in the documents that they themselves attached as exhibits to the first amended complaint at issue in the demurrer proceeding. These documents were attached to the first amended complaint and were incorporated into the complaint. " 'The general rule is that when a written instrument which is the foundation of a cause of action or defense is attached to a pleading as an exhibit and incorporated into it by proper reference, the court may, upon demurrer, examine the exhibit and treat the pleader's allegations of its legal effect as surplusage.' [Citation.]" (*Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 785-786.) Plaintiffs' argument that defendants may not point to the exhibits to disprove the allegations of the complaint is not well taken. If the factual allegations of the complaint conflict with the exhibits, we rely on the contents of the exhibits. (*Performance Plastering v. Richmond American Homes of California, Inc., supra*, 153 Cal.App.4th at p. 665.)

VI
Negligent Misrepresentation

The trial court found that because negligent representation is a species of fraud, a heightened degree of specificity is required for its pleading, and that the only representation alleged was that defendants would offer a permanent modification if plaintiffs complied with the terms of the TPP. Plaintiffs argue the trial court should have relaxed the rule of pleading because the defendants possess full information regarding the

facts of the controversy. "Less specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy.' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217 (*Committee on Children's Television, Inc.*), superseded on other grounds as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228.)

The heightened pleading standard requires the plaintiffs to plead "*facts* which 'show how, when, where, to whom, and by what means the representations were tendered.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) The strict pleading standards may be relaxed where a plaintiff alleges many affirmative misrepresentations occurring over a period of several years in methods whose time and place are fully known to the defendant. (See *Committee On Children's Television, Inc., supra*, 35 Cal.3d at p. 217.) However, that is not the case here. Plaintiffs attempt to make every statement they allege was made by a defendant the subject of their negligent misrepresentation cause of action, no matter where the allegation appears in the complaint. This is insufficient under the heightened pleading standard. It does not serve the purpose of furnishing defendant " 'with certain definite charges which can be intelligently met.' " (*Id.* at p. 216.) We therefore look only at the single misrepresentation plaintiffs have set forth in their negligent misrepresentation cause of action.

The trial court correctly found that the representation that Wells Fargo would offer a permanent modification if plaintiffs complied with the TPP was explicitly contradicted by the terms of the written agreement. The trial court also found that the representation was as to a future event, and that a negligent misrepresentation must be to past or existing facts to be actionable. "A representation generally is not actionable unless it is about 'past or existing facts.' [Citation.] Although a false promise to perform in the future can

21

support an *intentional* misrepresentation claim, it does not support a claim for *negligent* misrepresentation." (*Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 458.)

Here, Wells Fargo's alleged representation that it would offer a permanent modification was a promise of future performance, and cannot be the basis for a negligent misrepresentation cause of action.

## VII
### Declaratory Relief

Plaintiffs' third cause of action is for declaratory relief. Plaintiffs alleged a controversy regarding the ownership of the property arose because of defendants' breach of the security instrument, breach of the forbearance agreement, and refusal of defendants to cure the breaches.

They argue they have sufficiently alleged a cause of action for declaratory relief because an actual controversy exists in that they claim their deed of trust was paid off by default insurance.

Code of Civil Procedure section 1060 authorizes "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . . in cases of actual controversy relating to the legal rights and duties of the respective parties, [to] bring an original action . . . for a declaration of his or her rights and duties . . . ." (Code Civ. Proc., § 1060.) However, "[t]he purpose of a judicial declaration of rights in advance of an actual tortious incident is to enable the parties to shape their conduct so as to avoid a breach. '[Declaratory] procedure operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' [Citations.]" (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.)

In this case, plaintiffs seek a remedy for a past wrong, the sale of their home by foreclosure. Declaratory relief is inappropriate where a party claims a fully matured

22

cause of action for money. (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497.) In the absence of factual allegations indicating an actual present controversy, as opposed to the redress of a past wrong, plaintiffs have failed to state a cause of action for declaratory relief.

## VIII
## Quiet Title

The trial court found that plaintiffs' quiet title cause of action failed because plaintiffs did not tender full payment of their debt. A borrower cannot quiet title to secured property without alleging payment of the debt secured by the property. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86.)

Plaintiffs argue they were excused from alleging tender because the trustee's sale was void. They argue the sale was void because they were not provided notice of the sale.

Plaintiffs' argument is based on alleged irregularities in the foreclosure process. The tender requirement is excused only where: (1) the underlying debt is invalid; (2) the deed of trust is invalid; (3) there exists a counter claim that is equal to or greater than the amount due; or (4) it would be inequitable to impose the condition on the particular party challenging the sale. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-113.) Where, as here, the plaintiffs are attempting to set aside the foreclosure sale based on irregularities in the sale, they must allege tender of the amount of the secured debt.[8] (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578-579.)

As part of their argument that they were not required to tender payment of the debt for a quiet title action, plaintiffs argue the debt was paid by securitization or by default insurance. Apparently, they believe this constituted tender. However, assuming

---

[8]   Plaintiffs assert they have damage claims that would offset the amount they owe. As discussed, *ante*, plaintiffs have no damages.

plaintiffs' debt was paid through securitization or insurance, plaintiffs' obligation to perform under the note was not extinguished, and they cannot maintain a quiet title action absent an allegation of tender of the debt.

## DISPOSITION

The judgment is affirmed except as to Cal-Western.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                         /s/
                        Blease, Acting P. J.


We concur:


   /s/
   Robie, J.


   /s/
   Mauro, J.

24